Filed 4/19/18; Certified for Publication 5/9/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NEWPORT HARBOR OFFICES & MARINA, LLC,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>MORRIS CERULLO WORLD EVANGELISM et al.,<br><br>    Defendants and Appellants. | G054146<br><br>(Super. Ct. No. 30-2011-00479442)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Randall J. Sherman, Judge. Affirmed in part, reversed in part, and remanded with directions.

Galuppo & Blake, Louis A. Galuppo, Steven W. Blake, Andrew E. Hall and Daniel T. Watts for Defendants and Appellants.

Alston, Alston & Diebold and Elaine B. Alston for Plaintiff and Respondent.

\*        \*        \*

## INTRODUCTION

The California Supreme Court, in *Baral v. Schnitt* (2016) 1 Cal.5th 376 (*Baral*), held a special motion to strike under the California anti-SLAPP statute, Code of Civil Procedure section 425.16 (section 425.16),[1] may be directed to specific allegations of protected activity constituting a claim for relief within a pleaded count that also includes allegations of unprotected activity. Based on *Baral*, defendants and appellants Morris Cerullo World Evangelism (Cerullo), Plaza del Sol Real Estate Trust (Plaza del Sol) and Roger Artz (collectively Defendants) assert the trial court erred in denying their anti-SLAPP motion.

Defendants' anti-SLAPP motion had sought to strike the first three causes of action of the third amended complaint in their entirety and, alternatively, to strike a number of specific allegations. Cerullo is the sublessor and plaintiff and respondent Newport Harbor Offices & Marina, LLC (NHOM) is the sublessee of real property in Newport Beach. This is the fourth appeal and the third anti-SLAPP appeal arising out of the sublease and related agreements, business dealings, and disputes.[2]

We apply *Baral* and its summary of anti-SLAPP procedures and conclude (1) many, but not all, of the allegations challenged by Defendants in their anti-SLAPP motion are of protected activity within the meaning of section 425.16, subdivision (e) and (2) NHOM has not met its burden of establishing a probability of prevailing on the claims that are based on the allegations of protected activity. We therefore reverse, in part, and remand with directions to grant the anti-SLAPP motion as to the paragraphs of the third

---

[1] SLAPP is an acronym for "strategic lawsuit against public participation." (*Baral, supra*, at p. 381, fn. 1.)

[2] The other three were *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, affirmed __ Cal.5th __ (March 22, 2018, S239777); *Newport Harbor Offices and Marina, LLC v. Morris Cerullo World Evangelism* (Feb. 3, 2016, G050243) [nonpub. opn.]; *Copenbarger v. Morris Cerullo World Evangelism* (2013) 215 Cal.App.4th 1237 (*Copenbarger*).

amended complaint identified in the Disposition. We affirm in part because, among other things, the bulk of the paragraphs which were the subject of Defendants' anti-SLAPP motion do not arise out of protected activity.

## FACTS AND ALLEGATIONS

### I.

### Background Facts

Paul Copenbarger, acting individually and derivatively on behalf of NHOM, initiated this litigation in May 2011 by filing a complaint against Defendants and others for declaratory relief, breach of contract, and intentional interference with contract. Cerullo and Plaza del Sol were defendants in the first cause of action (declaratory relief) and the second cause of action (breach of contract).

*Copenbarger, supra*, 215 Cal.App.4th at pages 1240-1243 recites the allegations of the complaint and the background facts:

"In 1963, John J. Jakosky and Katherine F. Jakosky, as lessors, and F. David Young, as lessee, entered into a 55-year ground lease (the Ground Lease) of unimproved real property (the Property) in Newport Beach. In 1987, a multistory office building and marina were constructed on the Property by the lessee at the time. Under the terms of the Ground Lease, the lessee is the owner of any improvements constructed on the Property.

"Sometime before December 2003, Cerullo became the lessee under the Ground Lease. In January 2004, Cerullo entered in a sub-ground lease of the Property (the Sublease) with NHOM for a term expiring in November 2018. NHOM had been formed by Kent A. McNaughton and Copenbarger, who are its members. By quitclaim deed, Cerullo conveyed title to the improvements on the Property to NHOM.

"Also in January 2004, The Hazel I. Maag Trust (the Maag Trust) loaned $3 million to NHOM, which used the loan proceeds as partial payment to purchase the

3

improvements on the Property and to acquire the Sublease. The loan was evidenced by a promissory note, which was secured by a first priority deed of trust on the improvements and the Sublease. At the same time, NHOM executed a promissory note in the amount of $1.15 million in favor of Plaza del Sol. The promissory note to Plaza del Sol (the Plaza del Sol Note) was made to pay for the balance of the purchase price of the improvements and acquisition of the Sublease. The Plaza del Sol Note was secured by a second priority deed of trust (the Plaza del Sol Deed of Trust) on the improvements and the Sublease. Roger Artz was the trustee of Plaza del Sol and a vice-president of Cerullo.

"In April 2010, Cerullo, Plaza del Sol, and the Maag Trust entered into an agreement (the Assignment for Collection),[3] under the terms of which the Maag Trust agreed to make certain payments on the Plaza del Sol Note, to reimburse Plaza del Sol for real property taxes it paid on the improvements and the Property, and to make future payments to Plaza del Sol in the amount equal to payments due on the Plaza del Sol Note as such payments became due. Cerullo and Plaza del Sol agreed not to declare a default under the Sublease on account of then existing defaults so long as the Maag Trust made the agreed-upon payments.

"[Dennis] D'Alessio was the president of VMG [Vertical Media Group]. The complaint alleged that sometime before April 22, 2011, D'Alessio approached Artz and proposed that he cause Cerullo and Plaza del Sol to breach the Ground Lease, the Sublease, and the Assignment for Collection, by declaring a default under the Sublease and terminating it. . . . In response to D'Alessio's proposal, Cerullo and Plaza del Sol entered into a management agreement with VMG and authorized D'Alessio to serve NHOM with default notices.

"On April 22, 2011, VMG, on behalf of Cerullo, served NHOM with a 30-day notice (the 30-day notice) to cure certain maintenance and other related defaults

---

[3] The complaints and briefs refer to this as the Agreement Re: Assignment. We shall continue to use the term Assignment for Collection.

under the Ground Lease and the Sublease. The 30-day notice asserted that NHOM breached paragraph 1.2 of the Sublease by failing to maintain and repair both the improvements and the Property. The 30-day notice stated: '[W]e have conducted a limited inspection of the Property and have discerned there to be a wholesale failure on the part of [NHOM] to perform even a modicum of maintenance or repair to any aspect of the building or any part of it, to include major structural components.' The 30-day notice included a list of maintenance and repair issues and demanded that NHOM address them within 30 days.

"By letter dated May 18, 2011, Copenbarger, on behalf of NHOM, responded to the 30-day notice. He asserted, among other things, the sublessee's duty to maintain and repair under the Sublease did not extend to the improvements on the Property because the improvements were never subject to the Ground Lease and were conveyed by quitclaim deed to NHOM. By letter of the same date, Lloyd Copenbarger, as trustee of the Maag Trust, informed Artz and Plaza del Sol that the Maag Trust had requested that a property management company determine what repairs and maintenance needed to be made at the Property and arrange for those repairs and maintenance to be made, at the Maag Trust's expense.

"On May 26, 2011, VMG, on behalf of Cerullo, served a three-day notice to cure or quit (the three-day notice) on NHOM, based on '[y]our failure to cure the breaches of your Sub-Ground Lease . . . .' Five days later, Copenbarger, both in his individual capacity and derivatively on behalf of NHOM, filed this lawsuit. The complaint asserted three causes of action: (1) declaratory relief against Cerullo, Plaza del Sol, D'Alessio, and VMG; (2) breach of contract against Cerullo and Plaza del Sol; and (3) intentional interference with contract against Artz, D'Alessio, and VMG. In the declaratory relief cause of action, Copenbarger alleged a controversy exists among the parties 'concerning their respective rights and duties arising under' the Ground Lease, the Sublease, the Plaza del Sol Deed of Trust, and the quitclaim deed. Copenbarger

5

contended, among other things, NHOM had no duty to repair the improvements to the Property, the 30-day notice and the three-day notice were premature and did not comply with the Ground Lease, and NHOM is the owner of the improvements to the Property.

"[¶] . . . [¶]

"In June 2011, Cerullo commenced an unlawful detainer action against NHOM predicated on the 30-day notice and the three-day notice. The unlawful detainer complaint alleged NHOM was in breach of the maintenance and repair covenant of the Sublease, alleged service of the 30-day notice and the three-day notice, and attached copies of those notices.

"NHOM demurred to the unlawful detainer complaint, and, in response, Cerullo filed an amended unlawful detainer complaint. Instead of alleging breach of the maintenance and repair covenant, the amended unlawful detainer complaint alleged nuisance, that is, '[t]he failures of NHOM to effect repairs to and/or maintenance on the [P]roperty have resulted in public and private nuisances and dangerous conditions, caused the [P]roperty to be in violation of building and zoning codes, and constitute waste . . . .' On August 1, 2011, VMG, on behalf of Cerullo, served a second 30-day notice on NHOM. The second 30-day notice was substantially the same as the first one, but asserted that NHOM's failure to make the identified repairs and maintain the improvements to the Property 'has allowed the [P]roperty to become a public and private nuisance, constitutes waste, and constitutes violations of the building codes of the City of Newport Beach.'"

## II.

### The *Copenbarger* Decision

Defendants, D'Allesio, and VMG brought an anti-SLAPP motion to strike the complaint. The trial court granted the motion. We reversed on the ground the complaint was not based on protected activity. (*Copenbarger, supra*, 215 Cal.App.4th at

6

pp. 1245-1246.)  Although an unlawful detainer action and service of a three-day notice to quit are protected activity within the meaning of section 425.16, a complaint that arises out of or is based on conduct underlying the unlawful detainer action is not subject to an anti-SLAPP motion.  (*Copenbarger, supra*, at p. 1245.)  We explained:  "When, as in this case, the challenged lawsuit follows service of a three-day notice to quit, '[t]he pivotal distinction' is 'whether an actual or contemplated unlawful detainer action by a landlord (unquestionably a protected petitioning activity) merely "preceded" or "triggered" the tenant's lawsuit, or whether it was instead the "basis" or "cause" of that suit.'"  (*Ibid.*)

We concluded:  "In this case, service of the three-day notice preceded the complaint and might have triggered Copenbarger to file it, but the complaint was not based on service of that notice.  The first cause of action, for declaratory relief, does not attack the service of the three-day notice or the unlawful detainer action itself:  The gravamen of the declaratory relief cause of action is a dispute over the parties' respective rights and obligations under certain terms of the Ground Lease and the Sublease.  The first cause of action sought a declaration on several issues arising under the Sublease, including whether NHOM owned the improvements to the Property and had a duty to maintain and repair them.  The 30-day notice constituted evidence these lease interpretation issues were genuinely in dispute.  Cerullo's decision to amend the unlawful detainer complaint and the 30-day notice in order to assert nuisance, rather than breach of the covenant to maintain and repair, is evidence the declaratory relief cause of action was brought in good faith."  (*Copenbarger, supra*, 215 Cal.App.4th at p. 1247.)

### III.

### The Allegations of the Third Amended Complaint

NHOM replaced Copenbarger as the plaintiff and, in a second amended complaint, asserted 15 causes of action against various combinations of defendants.  The trial court sustained without leave to amend demurrers to the seventh through thirteenth

7

causes of action and granted a motion for judgment on the pleadings in favor of one defendant on the eleventh through thirteenth causes of action. NHOM voluntarily dismissed without prejudice the rest of the second amended complaint (including the causes of action asserted in the original complaint) and appealed. (*Newport Harbor Offices and Marina, LLC v. Morris Cerullo World Evangelism, supra,* G050243.) As to Defendants, we reversed the judgment on the thirteenth cause of action (for trespass) and affirmed the judgment on the seventh through twelfth causes of action. (*Ibid.*)

NHOM filed a third amended complaint asserting six causes of action, the first three of which were against Cerullo and Plaza del Sol. Artz was not named as defendant in the first three causes of action. The third amended complaint was expanded from the original complaint and added allegations of events since May 2011, when the original complaint was filed.

The third amended complaint added allegations that:

1. Cerullo filed an unlawful detainer action against NHOM in June 2011 in Orange County Superior Court (the UD Action).

2. A 60-day notice of intent to terminate the sublease was not served on the Maag Trust before the UD Action was filed.

3. On August 1, 2011, VMG served NHOM with a letter (the August 2011 Letter) stating NHOM was in breach of the Ground Lease and Sublease in that NHOM was committing waste, allowing a public and private nuisance, and violating city building codes. The August 2011 Letter demanded that NHOM perform certain repairs and maintenance to the improvements within 30 days. The August 2011 Letter allegedly differed from the April 2011 Letter by demanding different repairs and maintenance, including demands for removal and replacement of the roof, handrails, and balcony/walking decks.

4. On September 2, 2011, another three-day notice to cure or quit was served on NHOM (the second three-day notice). The three-day notice served in May 2011 was not withdrawn.

5. On September 12, 2011, a three-day notice to cure or quit (the third three-day notice) was served on NHOM for failure to pay rent. Within three days, NHOM paid the rent by check that was accepted and cashed.

6. In March 2012, a notice to cure (the March 2012 Notice to Cure) was served on the trustee of the Maag Trust. The March 2012 Notice to Cure declared a "wholesale failure on the part of [NHOM] to perform even a modicum of maintenance or repair to any aspect of the building." The Maag Trust cured all of the items listed in the March 2012 Notice to Cure within 60 days.

7. On August 7, 2012, settlement of the UD Action was discussed. No agreement was reached.

8. On August 15, 2012, a settlement agreement was signed by Cerullo, Plaza del Sol, and the Maag Trust. Under the terms of the agreement, the UD Action was to be dismissed in exchange for the Maag Trust purchasing the Plaza del Sol Note for $300,000 and making a donation of $100,000. The Maag Trust performed its obligations under the settlement agreement, but Cerullo and Plaza del Sol rescinded the settlement agreement and refused to dismiss the UD Action. The Maag Trust filed a lawsuit for breach of the settlement agreement.

9. In October 2015, Cerullo filed a request for dismissal without prejudice of the UD Action.

The first cause of action of the third amended complaint sought a declaration of the rights and duties of NHOM, Cerullo, and Plaza del Sol arising out of the Sublease and Ground Lease. The second cause of action of the third amended complaint sought a declaration of the rights and duties of NHOM, Cerullo, and Plaza del Sol arising out of the Assignment for Collection. The third cause of action of the third

9

amended complaint sought damages from Cerullo and Plaza del Sol for breach of the Sublease.

## IV.

### The Order Denying the Anti-SLAPP Motion.

In August 2016, Defendants brought the anti-SLAPP motion to strike the first three causes of action of the third amended complaint in their entirety and, alternatively, to strike a number of specific allegations. The trial court denied the motion. The court explained in a minute order: "[T]he opinion in *Copenbarger*[, *supra*,] 215 Cal.App.4th 1237 fully discussed the unlawful detainer case defendants filed against plaintiff, even though plaintiff filed this action before defendants filed their unlawful detainer action. The rationale of the Court of Appeal's prior decision fully applies to this motion. The gravamen of plaintiff's causes of action in its Third Amended Complaint is the same as in the original Complaint—disputes over the parties' rights and obligations under the Ground Lease and the Sublease, and defendant's alleged breach of the Sublease. Defendants' conduct does not arise from protected activity, and thus plaintiff's lawsuit is not an action threatening defendants' free speech or right to petition subject to the protection of CCP §425.16."

Defendants timely appealed from the order denying their anti-SLAPP motion. (See § 425.16, subd. (i) [order denying anti-SLAPP motion is directly appealable].)

### DISCUSSION

## I.

### Law of the Case

What is the effect of our opinion in *Copenbarger, supra*, 215 Cal.App.4th 1237? According to NHOM, it is law of the case and therefore compelled the trial court to deny the anti-SLAPP motion and compels us to affirm. According to Defendants,

10

*Copenbarger* is not law of the case because the allegations of the third amended complaint are materially different from those of the original complaint and because *Baral, supra*, 1 Cal.5th at page 376 constitutes an intervening change in law.

Witkin defines the law of the case doctrine as follows: "The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 459, p. 515; see *People v. Superior Court (Plascencia)* (2002) 103 Cal.App.4th 409, 432 ["The law of the case doctrine holds that when an appellate opinion states a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to through its subsequent progress in the lower court and upon subsequent appeal"].)

*Copenbarger* stated the rule of law that the causes of action pleaded in the original complaint did not arise out of protected activity within the meaning of section 425.16(b)(1). But since then, NHOM has amended that complaint. The rule of law stated in *Copenbarger* therefore would not necessarily govern the third amended complaint. Indeed, an exception to the law of the case doctrine is that the determination that a pleading is sufficient or insufficient is not binding in a subsequent proceeding in which the pleading has been amended in a material way. (9 Witkin, Cal. Procedure, *supra*, Appeal, § 467, pp. 524-525.)

The third amended complaint differs materially from the original complaint and includes allegations and claims that were not addressed in *Copenbarger*. For instance, the original complaint had one cause of action for declaratory relief and one cause of action for breach of contract. The declaratory relief cause of action sought a declaration of the rights and obligations under the Ground Lease, Sublease, Plaza del Sol Note, Plaza del Sol Trust Deed, and quitclaim deed. Eight points of contention were identified as being in dispute and needing judicial resolution. The breach of contract

11

cause of action alleged that Cerullo and Plaza del Sol breached the Sublease by failing to give the contractually-required 60-day notice of intention to terminate the Sublease.

In contrast, the third amended complaint has two causes of action for declaratory relief and an expanded cause of action for breach of contract. The first cause of action for declaratory relief seeks a declaration of the rights and obligations of the parties under the Sublease and identifies 18, rather than eight, points of contention for judicial resolution. The second cause of action for declaratory relief, which did not appear in the original complaint, seeks a declaration of the rights and obligations of the parties under the Assignment for Collection and identifies 11 points of contention for judicial resolution. The breach of contract cause of action alleges 23 ways in which Cerullo and Plaza del Sol breached the Sublease.

Because the third amended complaint differs materially from the original complaint, the rule of law stated in *Copenbarger*, which was based on the allegations of the original complaint, is not binding on us in addressing the anti-SLAPP motion to strike new allegations and claims.

Defendants also contend that *Baral* constitutes an intervening change in law that effectively disapproves *Copenbarger*. (See *People v. Gray* (2005) 37 Cal.4th 168, 197 [law of the case doctrine will not be applied when "'the controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations'"].) *Copenbarger* is entirely consistent with *Baral*. Regardless whether *Baral* may be characterized as an intervening change in law since *Copenbarger*, we are bound to follow *Baral*, just as we are bound to follow all California Supreme Court authority, in addressing the issues in this appeal. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455-456.)

12

## II.

## Background Law and Standard of Review

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1) (section 425.16(b)(1)).)

"The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity. Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. We have described this second step as a 'summary-judgment-like procedure.' [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed.'" (*Baral, supra*, 1 Cal.5th at pp. 384-385, fn. omitted.)

We review an order granting or denying an anti-SLAPP motion under the de novo standard and, in so doing, conduct the same two-step process to determine whether as a matter of law the defendant met its burden of showing the challenged claim arose out of protected activity and, if so, whether the plaintiff met its burden of showing

13

probability of success.  (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 113 (*Optional Capital*).)

### III.

### *Baral*

In *Baral*, the California Supreme Court addressed an issue that had bedeviled the Courts of Appeal:  "How does the special motion to strike operate against a so-called 'mixed cause of action' that combines allegations of activity protected by the statute with allegations of unprotected activity?" (*Baral, supra,* 1 Cal.5th at p. 381.)  The Supreme Court disapproved authority holding that an anti-SLAPP motion lies only to strike an entire count as pleaded in a complaint and held that an anti-SLAPP motion may be used to attack parts of a count, including specific allegations amounting to a claim. (*Id.* at pp. 382, 392-393.)

The Supreme Court rejected the idea that anti-SLAPP motions are restricted to indivisible causes of action as determined by the primary rights theory.  (*Baral, supra,* 1 Cal.5th at p. 394.)  The court reasoned that section 425.16(b)(1) expresses the Legislature's "desire to require plaintiffs to show a probability of prevailing on 'the claim' arising from protected activity, not another claim that is based on activity that is beyond the scope of the anti-SLAPP statute but that happens to be included in the same count." (*Baral, supra,* 1 Cal.5th at p. 393.)  The Legislature's choice of the term "motion to strike" reflected the understanding that "an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded." (*Ibid.*)  Thus, an anti-SLAPP motion may be used to attack specific allegations constituting a claim within a pleaded count.  If the targeted claim amounts to a cause of action "in the sense that it is alleged to justify a remedy" it is subject to an anti-SLAPP motion.  (*Id.* at p. 395.)

The Supreme Court concluded:  "Thus, in cases involving allegations of both protected and unprotected activity, the plaintiff is required to establish a probability

14

of prevailing on any claim for relief based on allegations of protected activity.  Unless the plaintiff can do so, the claim and its corresponding allegations must be stricken.  Neither the form of the complaint nor the primary right at stake is determinative." (*Baral, supra,* 1 Cal.5th at p. 395.)

*Baral* did not dispense with the requirement that a claim must arise out of protected activity in order to be subject to an anti-SLAPP motion.  "Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16.  [Citations.] Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral, supra*, 1 Cal.5th at p. 394.)

The *Baral* court provided this practical advice for applying its decision: "Although the issue arose here at the second step of the anti-SLAPP procedure, identification of causes of action arising from protected activity ordinarily occurs at the first step.  For the benefit of litigants and courts involved in this sometimes difficult area of pretrial procedure, we provide a brief summary of the showings and findings required by section 425.16(b).  At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them.  When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage.  If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached.  There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated.  The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment.  If not, the claim is stricken.  Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support

15

a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral, supra*, 1 Cal.5th at p. 396.)

We next apply *Baral* to Defendants' anti-SLAPP motion.

**IV.**

**First Step:  Identifying Allegations of Protected Activity and the Claims for Relief Supported by Them.**

"At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." (*Baral, supra,* 1 Cal.5th at p. 396.)  A claim arises from protected activity within the meaning of section 425.16(b)(1) if the activity underlies or forms the basis for the claim.  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062 (*Park*); *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79.)  "Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.'" (*Park, supra*, 2 Cal.5th at p. 1063.)  "In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability."  (*Ibid.*; see *Navallier v. Sletten* (2002) 29 Cal.4th 82, 89 ["In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity"].)

In the anti-SLAPP motion, Defendants moved to strike the first three causes of action of the third amended complaint in their entirety and, in the alternative, moved to strike the following paragraphs of the third amended complaint:  59-61, 65-67, 69, 72-77, 80, 81, 82(G), 82(H), 82(P), 82(Q), 86, 87(B)-(J), 91, 97-118, and 120.  They also moved to strike exhibits 29 through 33 of the third amended complaint.  Defendants argued those allegations and exhibits arose out of the protected activities of (1) filing, maintaining, settling, and refusing to dismiss the UD Action and (2) preparing and serving notices

16

preparatory to the UD Action, including the three-day notice, the August 2011 Letter, the second three-day notice, the third three-day notice, and the March 2012 Notice to Cure.

An unlawful detainer action and service of notices legally required to file an unlawful detainer action are protected activity within the meaning of section 425.16. (*Copenbarger, supra*, 215 Cal.App.4th at p. 1245.) "A cause of action arising out of such filing or service is a cause of action arising from protected activity." (*Ulkarim v. Westfield LLC* (2014) 227 Cal.App.4th 1266, 1275.) The litigation privilege applies to any communication that (1) is made in judicial or quasi-judicial proceedings, (2) by litigants or other participants authorized by law, (3) to achieve the objects of the litigation, and (4) has some connection or logical relation to the action. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) The litigation privilege extends to prelitigation communications relating to litigation that is contemplated in good faith and under serious consideration. (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251.)

Paragraphs 59 through 61, 65 through 67, 69, 72 through 77, and 80 are part of the third amended complaint's general allegations. The allegations of those paragraphs are collateral to the claims for relief and "merely provide context" to the causes of action alleged. (*Baral, supra*, 1 Cal.5th at p. 394.) Although, by virtue of paragraphs 81, 86, and 91, those allegations are incorporated into the first, second, and third causes of action, no claim for relief is based on them, and their apparent function is to provide context to and evidence of the parties' disputes. (See *Copenbarger, supra*, 215 Cal.App.4th at p. 1247.) Exhibits 29 through 33[4] have the same function.

---

[4] Exhibit 29 is the second three-day notice. Exhibit 30 is the third three-day notice with cover letter from VMG. Exhibit 31 is the March 2012 Notice to Cure. Exhibit 32 is the settlement agreement of the UD Action. Exhibit 33 is a request for dismissal of the UD Action.

Paragraphs 82(G), 82(H), 82(P), 82(Q), 87(B)-(J), 91, 97-118, and 120 are different in that they are pleaded within the first three causes of action. Paragraphs 82(G), 82(H), 82(P), and 82(Q) are within the first cause of action, which seeks a declaration of the parties' rights and duties under the Sublease and the Ground Lease. Paragraph 82 is a list of NHOM's contentions in that regard.

Paragraph 82(G) alleges that "[a]ny duty to repair has not yet arisen" and therefore the "claims and demands" of the 30-day notice, the August 2011 Letter, the first three-day notice, and the second three-day notice "are premature." This allegation does not arise out of protected activity because it is based on an underlying dispute over whether NHOM has a duty to repair under the terms of the Sublease and/or the Ground Lease. That dispute does not arise out of the various notices and August 2011 Letter, which were simply the trigger for and evidence of the dispute. (See *Copenbarger, supra,* 215 Cal.App.4th at pp. 1245, 1247.)

Paragraph 82(H) alleges the 30-day notice, the August 2011 Letter, the first three-day notice, and the second three-day notice "are invalid" because Cerullo did not give the Maag Trust a 60-day notice of intent to terminate as required by the Ground Lease. This allegation does not arise out of protected activity because it is based on the terms of the Ground Lease and, in effect, seeks a declaration of its meaning. Paragraph 82(H) is related to paragraph 82(N), which defendants do not specifically challenge, and alleges that a default under the Ground Lease cannot be declared unless and until service to lenders of the 60-day notice required by the Ground Lease.

For the same reasons, paragraphs 82(P) and 82(Q) do not arise out of protected activity. Paragraph 82(P) alleges the Maag Trust was not served with a 60-day notice, and paragraph 82(Q) alleges the legal effect of a failure to serve the 60-day notice is to make the notice of intent to declare a default "void and unenforceable." Paragraph 82(Q) does not challenge the service (or lack of service) of the 60-day notice in this case, but seeks a declaration of the meaning of the Ground Lease.

18

Paragraphs 87(B) through (J) are pleaded within the second cause of action, which seeks a declaration of the rights and duties of the parties under the Assignment for Collection. Paragraph 87 is a list of NHOM's contentions in that regard. Paragraph 87(B) alleges that in the Assignment for Collection Cerullo and Plaza del Sol agreed not to declare a default under the Sublease "on account of any then existing circumstances or conditions and that there is no time limit on this provision." This allegation does not arise out of protected activity because it seeks a declaration of the meaning of the Sublease without challenging specifically any of the various notices.

Subparagraphs (C), (D), and (E) of paragraph 87 allege that the conditions and circumstances in existence at the time the Assignment for Collection was executed included the "conditions set forth" in the 30-day notice, the August 2011 Letter, and the March 2012 Notice to Cure. Those allegations do not arise out of protected activity because they allege the notices simply provided evidence of and context for the conditions and circumstances in existence when the Assignment for Collection was executed. (See *Baral, supra*, 1 Cal.5th at p. 394; *Copenbarger, supra*, 215 Cal.App.4th at p. 1247.)

Subparagraphs (F) through (J) of paragraph 87 allege Cerullo and Plaza del Sol breached the Assignment for Collection by issuing the 30-day notice (¶ 87(F)), the first three-day notice (¶ 87(G)), the August 2011 Letter (¶ 87(H)), the second three-day notice (¶ 87(I)), and the March 2012 Notice to Cure. Those allegations arise out of protected activity. In these allegations, the various notices and August 2011 Letter are not merely collateral, contextual, or evidentiary to the claims asserted. Rather, subparagraphs (F) through (J) of paragraph 87 allege that Cerullo and Plaza del Sol breached the Assignment for Collection by engaging in protected activities.

For the same reasons, paragraphs 97 through 117, which are pleaded within the breach of contract cause of action, arise out of protected activity. These paragraphs allege that Cerullo and Plaza del Sol breached the Sublease by issuing the 30-day notice

19

(¶ 97), making unlawful or unjustified demands in the 30-day notice (¶¶ 98, 99), issuing the first three-day notice (¶ 100), terminating the Sublease by issuing the first three-day notice and filing the UD Action (¶ 101), issuing the August 2011 Letter "without dismissing the UD Action" (¶ 102), issuing the August 2011 Letter making false claims and unjustified or unlawful demands (¶¶ 103-106), issuing the second three-day notice "without dismissing the UD Action" (¶ 107), issuing the second three-day notice making false claims and unjustified or unlawful demands in it (¶¶ 108-111), issuing the third three-day notice "without dismissing the UD Action" (¶ 112), issuing the March 2012 Notice to Cure "without first dismissing the UD Action" (¶ 113), and issuing the March 2012 Notice to Cure making false claims and unjustified or unlawful demands (¶¶ 114-117). Paragraph 120 alleges that "each of the breaches . . . continued during the pendency of the UD Action and continue to this day." (Some capitalization omitted.)

Those allegations do not simply provide context for or evidence of the parties' disputes or of Cerullo and Plaza del Sol's alleged breaches. Nor is the protected activity merely the trigger for filing of the complaint. In paragraphs 97 through 117 and 120, NHOM is alleging that Cerullo and Plaza del Sol breached the Sublease by engaging in the protected activity of issuing notices and letters preparatory to filing the UD Action and filing (and refusing to dismiss) the UD Action. In *Copenbarger*, we concluded the causes of action for declaratory relief and breach of contract of the original complaint were based on the underlying dispute over the meaning of the Sublease, the Ground Lease, and other agreements between the parties. (*Copenbarger, supra*, 215 Cal.App.4th at p. 1247.) The allegations of the third amended complaint are substantially different because they "sought to impose liability" against Cerullo and Plaza del Sol "on the basis of such [protected] conduct." (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713.) Paragraphs 97 through 117 therefore "plainly f[a]ll within the scope of the anti-SLAPP statute." (*Ibid.*)

Paragraph 118 does not allege protected activity. It alleges Cerullo and Plaza del Sol breached the Sublease by not providing the Maag Trust with the 60-day

20

notice allegedly required by the Ground Lease. Paragraph 118 does not arise out of protected activity because, like Paragraph 82(P) and (Q), it is based on the terms of the Ground Lease.

We conclude paragraphs 87(F) through (J), 97 through 117, and 120 arise out of protected activity. The allegations of the third amended complaint which arise out of protected activity constitute claims for declaratory relief and breach of contract within the pleaded counts; that is, if proven the allegations of protected activity would justify a remedy. The question remains whether the entirety of the second cause of action and the third cause of action can be deemed to arise out of protected activity. The paragraphs of the third amended complaint that we have identified as alleging protected activity do constitute claims for relief; however, even without the allegations of protected activity, the first, second, and third causes of action state claims for relief arising out of allegations of unprotected activity.

After *Baral,* several cases have addressed whether the "primary thrust" or "gravamen" approach should be used to determine whether an entire cause of action arises out of protected activity in a so-called "mixed" cause of action. (Compare *Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1170 [rejecting "'primary thrust' or 'gravamen' approach"] with *Optional Capital, supra*, 18 Cal.App.5th at pp. 111, 112 & fn. 5 [disagreeing with *Sheley v. Harrop* and applying gravamen analysis] and *Okorie v. Los Angeles Unified School Dist.* (2017) 14 Cal.App.5th 574, 586-588, 591 (*Okorie*) [applying gravamen approach].) However, in all three cases, the anti-SLAPP motions sought to strike entire causes of action or pleadings and did not move to strike specific allegations within a pleaded cause of action. (*Optional Capital, supra,* at pp. 101-102; *Okorie, supra*, at p. 583; *Sheley v. Harrop, supra*, at p. 1155.) Here, in contrast, Defendants moved both to strike specific allegations and to strike entire causes of action.

We need not address whether to use the gravamen test because we understand *Baral* as directing us to strike just the allegations of protected activity and the

21

"claims" arising from them. It should be emphasized that the organization of the third amended complaint into separate causes of action is not determinative of the scope of the claims being stricken. "Neither the form of the complaint nor the primary right at stake is determinative." (*Baral, supra*, 1 Cal.5th at p. 395.) After *Baral*, the term mixed cause of action is not useful because, under *Baral*, an anti-SLAPP motion may be directed to specific allegations of protected activity which constitute claims for relief but do not constitute an entire cause of action as pleaded.

In this case, the claims based upon allegations of protected activity are not coextensive with the causes of action framed by the third amended complaint. Thus, in addressing the second step of the anti-SLAPP analysis, we consider the allegations of protected activity and the claims arising from them, and not the second cause of action and the third cause of action as framed by the third amended complaint.

## V.

**Second Step: Demonstrating Each Claim Based on Allegations of Protected Activity is Legally Sufficient and Factually Substantiated.**

At the second step, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." (*Baral, supra*, 1 Cal.5th at p. 396.) At this step, the plaintiff must establish the claims based on allegations of protected activity are legally sufficient and supported by a prima facie showing of facts which, if proved at trial, would support a judgment in the plaintiff's favor. (*Taus v. Loftus, supra*, 40 Cal.4th at pp. 713-714.) To meet this burden, a plaintiff cannot rely on its own pleading, even if verified (*Comstock v. Aber* (2012) 212 Cal.App.4th 931, 950), but must present admissible evidence (*Optional Capital, supra*, 18 Cal.App.5th at p. 112).

22

The only evidence that NHOM presented to meet its burden of showing probability of success was a declaration from its counsel purporting to confirm the allegations of the third amended complaint and authenticating the exhibits attached to that complaint and to a request for judicial notice. The declaration says nothing more than the attorney "personally assembled the exhibits to the Third Amendment Complaint" and that the attorney "personally know[s] that each of the exhibits attached to the Third Amended Complaint with exception of the Ground Lease and its amendments are true and correct copies of those documents." The declaration does not explain the basis for the attorney's personal knowledge.

"Authentication of a writing means . . . the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is." (Evid. Code, § 1400.) "Authentication of a writing is required before it may be received in evidence." (*Id.*, § 1401, subd. (a).) The attorney's declaration here establishes only that the exhibits to the third amended complaint are copies made of other documents. The declaration does not establish that the documents from which the copies were made are in fact the documents they are purported to be. The attorney does not declare that she prepared, is a party to, is the custodian of records of, or otherwise has personal knowledge sufficient to authenticate, the documents from which the copies were made.

The request for judicial notice sought judicial notice of the complaint, amended complaint, supplemental complaint in the UD Action, and the request for dismissal in *Morris Cerullo World Evangelism v. Newport Harbor Offices & Marina LLC* (Orange County Superior Court Case No. 30-2011-00485656), and our opinion in *Copenbarger.* These are proper subjects of a request for judicial notice (Evid. Code, §§ 451, subd. (a), 452, subd. (d).)

However, even considering the attorney declaration and request for judicial notice, NHOM did not meet its burden at the second step of the anti-SLAPP analysis.

23

The exhibits to the complaint and the documents of which we may take judicial notice are simply a jumble of documents. NHOM has presented no declaration or argument to tie the materials together and explain how they support the claims arising out of the allegations of protected conduct. NHOM cannot satisfy its burden as to a claim for declaratory relief merely by establishing the existence of a controversy. (*Mission Springs Water Dist. v. Verjil* (2013) 218 Cal.App.4th 892, 909.)

The only argument in that regard in NHOM's respondent's brief is this one citationless sentence: "In her declaration, [attorney] Alston authenticated pleadings, contracts and other documents as attached to the Opposition, all of which evidence the mountains of fact that suggest at least 'minimal' merit to Plaintiff's claims." It is not our job to sift through the mountains of evidence and figure out whether they support each element of a prima facie case. Nor is it our job to supply the legal authority and analytical framework to determine the legal sufficiency of the claims. It is the responsibility of NHOM, as the party opposing the anti-SLAPP motion, to organize the evidence and develop its arguments at the second step of the analysis. (*Taus v. Loftus, supra*, 40 Cal.4th at pp. 713-714; cf. *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074 [arguments not fully developed, not designated by separate argument headings, and not presented with sufficient analysis of the issues, are subject to forfeiture]; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["We are not bound to develop appellants' arguments for them"].)

We conclude therefore that NHOM did not meet its burden at the second step of the anti-SLAPP analysis of showing its claims based on allegations of protected activity are legally sufficient and supported by a prima facie showing of facts. As a consequence, the claims arising from paragraphs 87(F) through (J) and 97 through 117, as well as those paragraphs themselves, must be stricken from the third amended complaint. By ordering stricken the claims arising from paragraphs 87(F) through (J) and

24

97 through 117 we are not ordering stricken the entirety of the second or third cause of action because those causes of action include allegations of unprotected activity.

Artz is not named as a defendant in the first, second, and third causes of action and none of the stricken allegations is directed to him. Thus, as to Artz, the order denying the anti-SLAPP motion is affirmed.

## VI.

### Attorney Fees

Defendants argue they are entitled to attorney fees because they are prevailing parties on an anti-SLAPP motion. Under section 425.16, subdivision (c)(1): "[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to [Code of Civil Procedure] [s]ection 128.5."

Defendants have prevailed in part on the anti-SLAPP motion. NHOM also has prevailed in part. Artz has not prevailed at all. NHOM also has prevailed in part inasmuch as we are affirming in large part the trial court's order denying Defendants' anti-SLAPP motion. Pre-*Baral* authority identified factors for a court to consider in deciding whether to award attorney fees to a defendant partially prevailing on an anti-SLAPP motion. (*Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1305.) Because *Baral* permits a court to grant or deny an anti-SLAPP motion to specific allegations and claims arising from them, it anticipates a situation, such as here, in which the defendant prevails in part, and the plaintiff prevails in part, on an anti-SLAPP motion.

"Since the trial court's ruling was not entirely favorable to either party, and it did not make any award of attorney fees, we remand the matter for further appropriate proceedings in which any appropriate application for attorney fees may be brought and

25

considered in the first instance." (*Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.* (2018) 19 Cal.App.5th 399, 431.)

**DISPOSITION**

The order denying the anti-SLAPP motion as to Cerullo and Plaza del Sol is reversed in part and the matter is remanded with directions to grant the motion as to paragraphs 87(F) through (J), 97 through 117, and 120 of the third amended complaint and the claims arising from those paragraphs and to conduct further proceedings, if requested, in which attorney fees may be considered. In all other respects, and as to Artz, the order denying the anti-SLAPP motion is affirmed. Because each side prevailed in part, no party shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

Filed 5/9/18

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

NEWPORT HARBOR OFFICES &
MARINA, LLC,

    Plaintiff and Respondent,

      v.

MORRIS CERULLO WORLD
EVANGELISM et al.,

    Defendants and Appellants.

G054146

(Super. Ct. No. 30-2011-00479442)

ORDER GRANTING REQUEST
FOR PUBLICATION

        Appellants have requested that our opinion, filed on April 19, 2018, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(2), (3), and (5). The request is GRANTED. The opinion is ordered published in the Official Reports.

                                                FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.