Filed 1/4/24  Esposti v. Peters CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GLORIA J. ESPOSTI, as TRUSTEE, etc., | |
| Cross-complainant and Respondent, | G061701 |
| v. | (Super. Ct. No. 30-2020-01157517) |
| JACQUELINE M. PETERS, | O P I N I O N |
| Cross-defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Theodore R. Howard, Judge.  Affirmed.

Morris & Stone and Aaron P. Morris for Cross-defendant and Appellant.

The Law Office of Jim Kurkhill and Jim Kurkhill for Cross-complainant and Respondent.

\*        \*        \*

INTRODUCTION

Jacqueline M. Peters appeals from an order granting in part and denying in part her special motion made pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP statute)[1] to strike allegations and causes of action from a cross-complaint brought by Gloria J. Esposti, Trustee of the Gloria J. Esposti 1995 Revocable Trust (Esposti). Peters moved to strike 20 paragraphs and the entirety of the first and fourth causes of action of the cross-complaint. The trial court granted the motion as to two paragraphs and any claims arising out of those paragraphs and denied the rest of the motion. Esposti does not challenge the court's decision to strike the two paragraphs from the cross-complaint. We conclude the trial court's order is not erroneous and therefore affirm.

ALLEGATIONS OF THE CROSS-COMPLAINT

The property at 700 Begonia, units A and B, in Corona del Mar is a two-unit condominium development called the Begonia Townhomes (the Townhomes). Esposti owns unit A, and Peters owns and resides in unit B. The Townhomes are subject to a recorded declaration of covenants, conditions, and restrictions (CC&R's). The Townhomes homeowners association (the HOA) is an unincorporated association of the owners of the Townhomes.

Esposti and Peters are in a dispute over responsibility for exterior repairs and maintenance. Peters contends that under the CC&R's Esposti is responsible for making the exterior repairs and maintenance. Esposti contends that under the CC&R's

---

[1] "SLAPP" is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.) Further statutory references are to the Code of Civil Procedure unless otherwise stated. We refer to section 425.16, subdivision (b)(1) as section 425.16(b)(1) and section 425.16, subdivision (e) as section 425.16(e). We refer to the special motion authorized by section 425.16(b)(1) as an anti-SLAPP motion.

the cost of exterior maintenance and repair is the responsibility of the HOA, "to be funded equally by each owner."

Peters sued Esposti. Peters' first amended complaint against Esposti asserts causes of action for injunctive relief, declaratory relief, breach of the CC&R's, nuisance, and negligence. In paragraph 9 of the complaint, Peters alleged: "While the [CC&R's] assume[] and reference[] all the traditional aspects of a homeowners association, such as a Board of Directors, Association Rules, and the Association itself, and speaks in terms of the Association being tasked with enforcement of the Declaration, in reality there is no Association. The contemplated Association does not exist."

Esposti filed a cross-complaint against Peters (the Cross-complaint) which asserted causes of action for breach of fiduciary duty, breach of the CC&R's, declaratory relief, and intentional infliction of emotional distress. The gist of the dispute is alleged in paragraphs 2 through 4 of the Cross-complaint, as follows: "2. Peters caused Esposti to solely incur $92,200.00 in common area repair and maintenance costs that should be borne by the homeowners' association, which in turn are to be assessed equally by both owners. In early 2019, Peters claimed that certain windows and the wood siding adjacent to Esposti's unit have caused damages to Peter's unit. Though the windows and siding are part of the common area and are the Association's sole responsibility to repair and maintain, Peters demanded that Esposti pay for these common area repairs herself. [¶] 3. Esposti began seeking bids for the recommended exterior repairs to split 50-50 as per the CC&Rs. At the same time, Esposti responded to Peters' demand by advising Peters that the exterior walls of the condominium, including the windows and siding, are part of the common area and are the responsibility of the homeowners' association to repair and maintain and that the costs of exterior repairs are to be split evenly. Esposti further explained that each unit owner was individually responsible for their separate interest, which is comprised of the airspace in each unit. [¶] 4. Peters wrote back, disagreeing

3

with Esposti's position, claiming that the best way to resolve their dispute was for Esposti to sell her unit to Peters."

Paragraph 5 of the Cross-complaint alleges that in order to "weaponize City codes against Esposti" Peters notified the City of Newport Beach in January 2021 that a garage at Esposti's unit was not on the original plans. Paragraph 6 alleges that in April 2021, Peters made a complaint to the City of Newport Beach concerning the replacement of windows and an exterior door on Esposti's unit.

Paragraph 7 of the Cross-complaint alleges: "Peters recently amended her complaint alleging an unspecified $400,000 in damages, never having once discussed these alleged damages with Esposti, and never having provided any updated repair estimates to Esposti to the claimed damage Peters suffered to her unit."

Paragraph 8 of the Cross-complaint alleges: "In [both] her original Complaint and First Amended Complaint, Peters has alleged that 'in reality, there is no Association'—a claim that is patently false. . . . The Association legally exists but is prevented from properly functioning because Peters refuses to engage or communicate with Esposti. Instead of working with Esposti in furtherance of the CC&R's, Peters had ceased all communication with Esposti since April 2019." The Cross-complaint further alleges that Peters communicates only through her attorney, which prevents "any semblance of an operating association" and "subvert[s] the essential role of the association." Paragraph 9 alleges: "Since 2019, Peters has continuously acted in her self-interest [*sic*] to the detriment of the Association and Esposti, both of whom are owed a fiduciary duty from Peters."

Paragraphs 10 through 20 of the Cross-complaint allege: (1) counsel for Esposti and Peters communicated regarding resolving the dispute informally or through arbitration; (2) Peters' counsel claimed there was a binding arbitration agreement; (3) this arbitration agreement provided that the cost of arbitration shall be borne as decided by the arbitrator; (4) Esposti was not bound by the arbitration

4

agreement because she had not signed it and it was not part of the HOA's governing documents; (5) the CC&R's included a prevailing party attorney fees provision; (6) Esposti's counsel communicated to Peters' counsel that Esposti would agree voluntarily to arbitration pursuant to the arbitration agreement if Peters agreed to include a prevailing party attorney fees provision; (7) Peters refused this request and filed her complaint; (8) after Peters filed her complaint, the parties met several times to discuss mediation; and (9) Peters' counsel sent Esposti's counsel an e-mail stating that Peters was not interested in mediation. The Cross-complaint alleges at paragraph 20 that, as a consequence, Peters had violated Civil Code section 5950 and, therefore, the court should deny Peters' request for attorney fees alleged in her complaint.

THE ANTI-SLAPP MOTION

Peters brought an anti-SLAPP motion by which she moved to strike paragraphs 1 and 2, 4 through 21, the first cause of action (breach of fiduciary duty) and fourth cause of action (intentional infliction of emotional distress) of the Cross-complaint in their entirety. Esposti agreed that paragraphs 5 and 6 should be stricken because they referred to Peters' interactions with the City of Newport Beach, which would be a protected activity, but otherwise opposed the motion.

The trial court granted the anti-SLAPP motion as to paragraphs 5 and 6 "and any claims in the [Cross-complaint] to the extent based thereon." The court denied the motion in all other respects. The court found: (1) paragraphs 1, 2, and 4 of the Cross-complaint do not involve protected activity; (2) paragraphs 7 through 9 refer to protected activity but only to provide context for Esposti's claims rather than as a basis of liability; (3) paragraphs 10 through 20 refer to protected activity but only as a basis for denying Peters attorney fees under Civil Code section 5960; and (4) the first and fourth causes of action did not arise out of protected activity.

5

DISCUSSION

I. *Summary of anti-SLAPP Law and Standard of Review*

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16(b)(1).) "The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, meritless claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*), italics omitted.)

Anti-SLAPP motions are resolved through a two-step analysis. (*Baral, supra*, 1 Cal.5th at p. 384.) At the first step, the defendant must establish that the challenged allegations or claims arise out of activity protected under section 425.16. (*Ibid.*; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) If the defendant meets this burden, then, at the second step, the burden shifts to the plaintiff to demonstrate the claims have at least "'minimal merit'" (*Park,* at p. 1061) by making "a prima facie factual showing sufficient to sustain a favorable judgment" (*Baral,* at pp. 384-385, 396).

"We review an order granting or denying an anti-SLAPP motion under the de novo standard and, in so doing, conduct the same two-step process to determine whether as a matter of law the defendant met its burden of showing the challenged claim arose out of protected activity and, if so, whether the plaintiff met its burden of showing probability of success." (*Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 42 (*Newport Harbor*).)

II. *The Trial Court Did Not Err by Granting in Part and Denying in Part Peters'*
   *anti-SLAPP Motion*

   A. *The First Step of the anti-SLAPP Analysis*

   "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." (*Baral, supra,* 1 Cal.5th at p. 396.) After identifying the allegations of protected activity, the defendant must demonstrate the activity alleged falls within one of the four categories described in section 425.16(e).[2] (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620.) In addition to the pleadings, the court may consider declarations and other evidence presented to determine what conduct is being challenged, but not to assess the merit of the claims. (*Joslin v. Third Laguna Hills Mutual* (2020) 49 Cal.App.5th 366, 371.)

   A claim arises from protected activity within the meaning of section 425.16(b)(1) if the activity underlies or forms the basis for the claim. (*Park, supra*, 2 Cal.5th at p. 1062; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78-79.) "Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.'" (Park, at p. 1063.) "In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Ibid.*)

---

[2] The four categories are: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16(e).)

B. *Specific Allegations*

With respect to each of the challenged paragraphs of the Cross-complaint, we conclude:

Paragraphs 1, 2, and 4 of the Cross-complaint are factual allegations and do not include allegations of protected activity.

Paragraph 7 of the Cross-complaint alleges that Peters amended her complaint to allege "an unspecified $400,000 in damages" without discussing those damages with Esposti and providing updated repair estimates. Amending a complaint is protected activity under the anti-SLAPP statute. (§ 425.16(e)(1).) But paragraph 7 does not purport to state a claim arising out of protected activity; instead, paragraph 7 serves as context for or an example of Peters' allegedly tortious conduct. (See *Newport Harbor, supra*, 23 Cal.App.5th at p. 46.) As Esposti argues, she has no claim arising out of amending the complaint; rather, she argues that "Peters has a separate and independent obligation to address her purported damages to Esposti apart from the claims she is making in the lawsuit."

Paragraph 8 of the Cross-complaint refers to Peters having alleged in her complaint that there was no HOA. Although making allegations in a complaint is protected activity (§ 425.16(e)(1)), the reference in paragraph 8 to Peters' allegations merely provides context for and evidence of the dispute between the parties. (See *Newport Harbor, supra*, 23 Cal.App.5th at p. 46.) Esposti's claim arises out of allegations that Peters denied the existence of the HOA and refused to cooperate with Esposti in operating it, which is not protected activity. (*Park, supra*, 2 Cal.5th at p. 1063.)

Paragraph 9 of the Cross-complaint is a factual allegation and does not allege protected activity.

Paragraphs 10 through 20 of the Cross-complaint allege prelitigation and postlitigation communications regarding arbitration and mediation. We do not decide

8

whether the activities alleged in paragraphs 10 through 20 are protected because we conclude those activities do not underlie or form the basis for any of Esposti's claims. Under the Davis-Stirling Common Interest Development Act (Civ. Code, § 4000 et seq.), a homeowners association or a member of a homeowners association may not file an enforcement action unless "the parties have endeavored to submit their dispute to alternative dispute resolution pursuant to this article." (Civ. Code, § 5930, subd. (a).) The allegations in paragraphs 10 through 20 were thus necessary to satisfy a prerequisite to bringing an action to enforce the CC&R's. In addition, "[i]n an enforcement action in which attorney's fees and costs may be awarded, the court, in determining the amount of the award, may consider whether a party's refusal to participate in alternative dispute resolution before commencement of the action was reasonable." (Civ. Code, § 5960.) Paragraphs 10 through 20 are alleged as a basis to deny Peters' request for attorney fees under Civil Code section 5960, not as the basis for any claim asserted in the Cross-complaint. Paragraph 21 of the Cross-complaint recites the forms of relief requested by Esposti and does not allege protected activity.

### C. *First and Fourth Causes of Action*

#### 1. Treatment of Mixed Causes of Action

Peters argues the first and fourth causes of action of the Cross-complaint should have been stricken in their entirety because they incorporate by reference the specific allegations to which her anti-SLAPP motion was directed. The trial court ordered that only paragraphs 5 and 6 of the Cross-complaint and any claims based on those two paragraphs be stricken. Although paragraphs 5 and 6 are incorporated by reference into the first and fourth causes of action, striking paragraphs 5 and 6 does not mean the first and fourth causes of action also must be stricken. The Cross-complaint includes many allegations of unprotected activities that are alleged to support Esposti's breach of fiduciary duty and intentional infliction of emotional distress causes of action.

9

The trial court was correct to deny Peters' request to strike the first and fourth causes of action.

With so-called "'mixed causes of action,'" that is, causes of action based on allegations of both protected and unprotected activity (*Baral, supra*, 1 Cal.5th at pp. 381-382; see *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010 (*Bonni*)), the focus of analysis shifts from evaluating the cause of action as a whole to evaluating individual claims so that the court can determine whether a claim, rather than a cause of action, constitutes a "proper subject of a special motion to strike . . . ." (*Baral,* at p. 382; *id*. at p. 395.) For purposes of the anti-SLAPP statute, a claim refers to a set of facts allegedly giving rise to relief. (*Baral,* at pp. 382, 395.) A "cause of action" differs from a claim: A cause of action means the separate counts as pleaded by the plaintiffs. (*Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 148, fn. 4.) "A single cause of action can incorporate more than one claim; at the same time, a single claim can sometimes form the basis for more than one cause of action." (*Ibid*.)

The focus therefore is not on the "gravamen" of a cause of action as a whole, but on whether each claim *within* the causes of action arises from activity protected by section 425.16. This means the grant or denial of an anti-SLAPP motion directed to a mixed cause of action is not necessarily an all-or-nothing proposition. "When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at [the first] stage." (*Baral*, *supra*, 1 Cal.5th at p. 396.) If an anti-SLAPP motion is granted with respect to claims arising out of protected activity, any claims arising out of allegations of unprotected activity would remain.

In *Bonni, supra*, 11 Cal.5th 995, the California Supreme Court explained how *Baral*'s claim-by-claim approach made the gravamen approach obsolete even when, as in the present case, an anti-SLAPP motion is directed to entire causes of action: "Since *Baral*, most Courts of Appeal have taken a claim-by-claim approach to the anti-

SLAPP analysis, rather than attempting to evaluate a cause of action as a whole. [Citations.] . . . Here, in a motion filed before *Baral* was issued, the [defendants] moved to strike the entire retaliation cause of action. [Plaintiff] contends that because the motion aimed at the entire cause of action, we should consider whether the gravamen of the entire cause of action was based on protected or unprotected activity. [¶] We reject the contention: Our holding in *Baral* applies even though the [defendants] sought to strike the entire cause of action, rather than merely parts of it. If we were instead to adopt [the plaintiff]'s proposed gravamen approach, we would again risk saddling courts with an obligation to settle intractable, almost metaphysical problems about the 'essence' of a cause of action that encompasses multiple claims. [Citation.] The attempt to reduce a multifaceted cause of action into a singular 'essence' would predictably yield overinclusive and underinclusive results that would impair significant legislative policies. Striking a cause of action that rests in part on unprotected activity constrains a plaintiff's ability to seek relief without advancing the anti-SLAPP's goals of shielding protected activity, which would have been fully served by striking from the complaint only the allegations of protected activity. Conversely, refusing to strike any part of a cause of action that rests in part on protected activity defeats the legislative goal of protecting defendants from meritless claims based on such conduct." (*Bonni*, at pp. 1010-1011.)

   2.  Claims Arising Out of Paragraphs 5 and 6

   Here, the allegations of protected activity in paragraphs 5 and 6 of the Cross-complaint are not coextensive with Esposti's first and fourth cause of action, which also arise out of allegations of unprotected activity. Put another way, "without the allegations of protected activity, the [first and fourth] causes of action state claims for relief arising out of the allegations of unprotected activity." (*Newport Harbor, supra*, 23 Cal.App.5th at p. 48.) Thus, only the claims for relief arising *specifically* out of the allegations of paragraphs 5 and 6 are subject to a motion to strike. The trial court

11

correctly applied the law by concluding that only claims arising out of paragraphs 5 and 6 be stricken.  (*Bonni, supra*, 11 Cal.5th at pp. 1010-1011.)  All the other claims presented by the Cross-complaint remain because they do not arise out of protected activity.

## DISPOSITION

The order is affirmed.  Respondent shall recover costs on appeal.


SANCHEZ, J.

WE CONCUR:


O'LEARY, P. J.


GOODING, J.