Filed 9/1/21  Rodriguez v. Gonzalez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| OMAR RODRIGUEZ, as Administrator, etc.,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>VICTOR GONZALEZ,<br><br>    Defendant and Appellant. | G058860<br><br>(Super. Ct. No. 30-2017-00907270)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Nathan R. Scott, Judge.  Affirmed.  Request for judicial notice.  Granted.

Larson Law Group and Charles L. Larson for Defendant and Appellant.

The Community Law Group and Mark S. Smith for Plaintiff and Appellant.

*          *          *

# INTRODUCTION

Plaintiff Omar Rodriguez (plaintiff), acting as administrator for the estate of his late mother, Maria Gonzalez (the decedent), sued his half-brother Victor Gonzalez (defendant) for elder abuse. Plaintiff alleged defendant retained the decedent's interest in real property for a wrongful use or with the intent to defraud, within the meaning of Welfare and Institutions Code section 15610.30, subdivision (a)(1). Plaintiff further alleged defendant had previously persuaded the decedent to convey her interest to defendant for the stated purpose of refinancing the property and falsely promised to thereafter convey her interest in the property back to her.

Defendant filed a motion under the California anti-SLAPP statute, Code of Civil Procedure section 425.16 (section 425.16),[1] in which he argued the entire lawsuit must be stricken because it arose out of defendant's acts of filing unlawful detainer actions against the decedent which constitute protected activity. Plaintiff filed an opposition to the motion, but did not produce evidence showing his probability of prevailing on the claim. The trial court granted the motion in part by striking allegations pertaining to defendant's efforts to pursue unlawful detainer remedies. Both parties appealed.

We affirm. The trial court correctly struck the allegations from the operative complaint that constitute protected activity. We reject defendant's argument the trial court erred by failing to strike the entire complaint because plaintiff's claim also arose out of unprotected activity: The complaint alleged defendant was liable for elder abuse because he wrongfully retained the property by refusing to add back the decedent's interest in the property to the title, construing her mortgage payments as rent, and refusing to discuss his actions further encumbering the property with her because it was "none of [her] business."

---

[1] SLAPP is an acronym for "'strategic lawsuit against public participation.'" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1 (*Baral*).)

2

# FACTS AND PROCEDURAL BACKGROUND

## I.

### SUMMARY OF ALLEGATIONS

The operative pleading, the fourth amended complaint (the complaint), contains a single claim for elder abuse against defendant. The following is a summary of the allegations of the complaint.

On October 31, 1997, the decedent and defendant together purchased real property consisting of two houses on one lot located in Anaheim (the property). Plaintiff paid the down payment to purchase the property; the decedent and defendant took title as joint tenants. The decedent, plaintiff, and members of their family "took immediate and consistent possession of" the property. The decedent and defendant each paid half of the monthly mortgage in the total amount of $2,066.86, on the first trust deed held by Citibank Mortgage (Citibank).

In March 2008, defendant asked the decedent to transfer her interest in the property to him so that he could more easily qualify for a new loan as the sole owner of the property and thereby successfully refinance the property. Defendant assured the decedent that her interest in the property would not be affected and promised her in front of other family members that he would transfer the title to her interest in the property back to her after the loan was obtained.

Defendant thereafter instructed the decedent to give him her share of the monthly mortgage payment, explaining that he would pay the full amount of the mortgage payment to Citibank using her contribution. The decedent followed defendant's direction and paid him one-half the amount of the monthly mortgage payment each month. Defendant, however, stopped paying the mortgage and in December 2012, the mortgage fell into default.

Unbeknownst to the decedent, defendant arranged for a loan payment forbearance deferment extension agreement whereby six delinquent payments were

3

placed at the end of the first mortgage term and defendant paid Citibank six payments of $729.68 each. Defendant honored the forbearance agreement but neither reimbursed the decedent for her share of the mortgage payments she gave him during the six months he failed to make mortgage payments, nor transferred the decedent's interest in the property back to her.

In May 2013, the decedent turned 65 years old. The following month, defendant again became delinquent on the mortgage. The decedent first discovered defendant's default at the end of December 2013 when Citibank mailed default notices to the property. When the decedent confronted defendant about the default notices, he told her, "It is none of your business, you are not an owner, just a tenant."

A real estate broker who checked the chain of title on the property confirmed to the decedent that defendant had full title to the property. The decedent learned about the existence of defendant's forbearance agreement with Citibank, as well as trust deeds in the amount of $73,750 and $313,000 that defendant had taken out on the property without the decedent's knowledge. Related documentation had both the decedent's and defendant's signatures on it. Defendant had told the decedent, who neither spoke nor read English and who trusted defendant, that the decedent was signing documents to reduce the mortgage payments. Defendant's actions to further encumber the property caused the monthly mortgage payments to increase by $600.

From May 4, 2013 until the day the decedent died on April 27, 2015 at 66 years of age, defendant not only refused the decedent's persistent requests that he add her back on the title to the property but also "engaged in cruel tactics in an attempt to displace [her] from her home." Defendant made several attempts to evict the decedent, plaintiff, and other family members from the property. Defendant's "conduct and treatment of the elder Decedent, his mother, was continually egregious, unconscionable and abusive from the date he first duped Decedent into signing over her interest in the title to the Real Property in March of 2008, through the date of her death on April 27,

4

2015, and continued by his consistent harassment of Plaintiff and the other beneficiaries of Decedent's estate following Decedent's death.  In fact, [defendant]'s behavior contributed to Decedent's final illness and ultimately her death."

Following the decedent's illness and death, plaintiff assumed the responsibility of pursuing this matter on behalf of his mother.  As administrator of the decedent's estate, plaintiff renewed the decedent's requests that defendant "honor their mother's wish to transfer her interest in the Real Property back to her estate, as Plaintiff and his siblings are . . . heirs to the Decedent's estate."  Plaintiff initiated this lawsuit on March 7, 2017, within two years of the decedent's death.

## II.

### THE ANTI-SLAPP MOTION AND OPPOSITION

Defendant filed an anti-SLAPP motion challenging the complaint on the ground it was entirely based on defendant's legal actions and lawsuits he "undertook to defend his interest in the property that he rightfully acquired and believed was his."  The motion argued:  "Plaintiff has factually alleged only two actual acts to support his claim.  The first is the purported deceit in the acquisition of the property, a claim the Court has already ruled is time barred and cannot constitute elder abuse because Plaintiff was not an elder at the time.  The second is the filing of legal actions for unlawful detainer against Decedent regarding the property.  These actions are specifically protected under *Cal Civ. Proc.* § 425.16 (anti-SLAPP) and since the entire Complaint is based on them, the Fourth Amended Complaint should be stricken in its entirety."

Plaintiff filed an opposition to the anti-SLAPP motion, arguing that the allegations regarding defendant's unlawful detainer filings are "an incidental part of the *continuing* elder abuse Defendant committed against the Decedent by fraudulently convincing Decedent to sign over her real property, refusing to return title of her property to her as promised, defaulting on the mortgage payments on the property, and encumbering her property without her knowledge or permission."

5

## III.

### THE TRIAL COURT GRANTS THE ANTI-SLAPP MOTION IN PART

Following the hearing on the anti-SLAPP motion, the trial court concluded that the complaint's allegations of protected conduct, in the form of filing unlawful detainer actions, "are not merely 'collateral, contextual, or evidentiary to the claims asserted.' [Citation.] Rather, the complaint alleges defendant committed elder abuse 'by engaging in the protected activity of . . . filing . . . the UD Action.'" As "[p]laintiff failed to meet his shifted burden 'to show a probability of prevailing' on these protected claims with 'competent admissible evidence,'" the trial court struck the following allegations from the complaint:

(1) In paragraph 15 the phrase "Defendant GONZALEZ attempted several times to evict Decedent, Plaintiff and other family members from the Real Property;"

(2) Paragraphs 16 through 18 in their entirety;[2]

---

[2] Paragraphs 16 through 18 of the complaint state as follows:

"16. Defendant GONZALEZ filed his first unlawful detainer action against the elder Decedent, Plaintiff and other family members on December 17, 2013. At trial in that case, the Court ruled in Decedent's favor and submitted findings that Defendant GONZALEZ had taken advantage of Decedent in order to obtain full ownership of the Real Property by committing fraud against the Decedent, as she did not understand what she had signed. The Court determined that there was no landlord-tenant relationship between Defendant GONZALEZ, the Decedent, Plaintiff and the remaining defendants in that case. A judgment was entered in favor of the Decedent, Plaintiff and the other family members, and against Defendant GONZALEZ.

"17. Undeterred by the Court's ruling in the first unlawful detainer action, Defendant GONZALEZ filed another unlawful detainer action against the elder Decedent, Plaintiff and other family members. The case was summarily dismissed by the Court.

(3) In paragraph 26, the phrase "and made several attempts to evict Decedent from her Real Property . . . at the age of 66";

(4) In paragraph 28, the phrase "and attempts to evict Decedent from her home"; and

(5) In paragraph 31.D, the sentence "Defendant GONZALEZ attempted on several occasions to evict Decedent from her real property residence, causing Decedent great stress and illness."

The parties each filed a notice of appeal from the trial court's order.

## REQUEST FOR JUDICIAL NOTICE

Defendant has requested we take judicial notice of (1) the complaint filed by the decedent against defendant in 2013 in Orange County Superior Court Case No. 30-2013-00694859 in which she alleged claims of negligence, fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, quiet title, and conversion; (2) the order to show cause why the decedent's action against defendant in that prior case should not be dismissed given that plaintiff had failed to file letters of administration and other documents required under Code of Civil Procedure

---

"18. During the pendency of the third unlawful detainer filed against her by her son, the elder Decedent became ill due to Defendant GONZALEZ's callous and abusive behavior toward her. In the midst of Decedent's illness, literally on her death bed, Decedent told Plaintiff that she did not want Defendant GONZALEZ to have her interest in the Real Property. Decedent instructed Plaintiff to finish what she started and pursue legal proceedings against Defendant GONZALEZ to assure that he did not benefit from his abusive and deceitful behavior against her by receiving the Real Property after her death."

7

section 377.32; and (3) the minute order dated August 11, 2016 dismissing that action without prejudice.

We grant defendant's request and take judicial notice of the requested documents from case No. 30-2013-00694859 as they constitute records of a court of this state. (Evid. Code, § 452, subd. (d)(1).)

## DISCUSSION

### I.

#### PLAINTIFF'S NOTICE OF APPEAL WAS TIMELY FILED

Before addressing the merits of the parties' arguments challenging the trial court's ruling on the anti-SLAPP motion, we address and reject defendant's argument in his opening brief that plaintiff's appeal is untimely.

California Rules of Court, rule 8.104(a) sets forth the deadlines for appealing as follows: "(1) Unless a statute or rules 8.108, 8.702, or 8.712 provides otherwise, a notice of appeal must be filed on or before the earliest of: [¶] (A) 60 days after the superior court clerk serves on the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment[3] or a filed-endorsed copy of the judgment, showing the date either was served; [¶] (B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service; or [¶] (C) 180 days after entry of judgment."

In other words, to start the 60-day clock to file a notice of appeal under rule 8.104(a)(1)(A) or (B), the court clerk or a party must serve a document entitled notice of entry of judgment or a filed-endorsed copy of the appealable judgment or order itself.

---

[3] Subdivision (e) of rule 8.104 of the California Rules of Court provides that the term "'judgment'" in subdivision (a) "includes an appealable order if the appeal is from an appealable order."

Here, neither the court clerk nor any party served a document entitled notice of entry of judgment or a filed-endorsed copy of the court's minute order; defendant does not contend otherwise. As a result, the 60-day time period was never triggered and plaintiff, therefore, had 180 days within which to appeal from the December 18, 2019 order. Plaintiff filed his notice of appeal on March 17, 2020, well within the 180-day period under rule 8.104(a)(1)(C).

In his opening brief, defendant argues the 60-day clock started to run on the time to appeal under rule 8.104(a)(1)(A) when the court clerk served on plaintiff a copy of the trial court's minute order granting in part the anti-SLAPP motion: "The actual Court's ruling is attached to the minute order and incorporated by reference. While this order does not bear the same file stamp as documents filed by parties, it bears a date and time and the name of the responsible clerk. [¶] . . . [S]ince only the clerk may remove and replace records in the court's files, it must be concluded that the time, date and name of the clerk serve as the file stamp of the minute order."

The California Supreme Court in *Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 902 (*Alan*), however, held that the court clerk's service on the appellant of a dated minute order did not itself qualify as a "file-stamped copy" of the minute order under former rule 8.104. In concluding the trial court erred by dismissing the appellant's appeal as untimely, the Supreme Court explained: "While [the clerk's mailing] did contain a copy of the appealable minute order, that order is not file stamped. The typed or printed notation that appears at the bottom of that order—'MINUTES ENTERED 01/02/03 COUNTY CLERK'—is not a file stamp. [Citation.] Accordingly, the clerk's mailing did not satisfy rule 8.104(a)(1), and [appellant]'s notice of appeal was timely filed." (*Alan, supra*, at p. 902.)

The governing version of rule 8.104(a)(1) requires that, absent service of a notice of entry of judgment, the court clerk or party must serve a filed-*endorsed* copy of the appealable judgment or order to trigger the 60-day deadline to file a notice of appeal.

9

Our record does not show that a filed-endorsed copy of the court's minute order (or file-*stamped* copy under the former version of the rule) was served on plaintiff. We therefore conclude plaintiff's notice of appeal was timely filed and next address the merits of the parties' respective arguments challenging the trial court's ruling on the anti-SLAPP motion.

## II.

### THE TRIAL COURT'S RULING ON THE ANTI-SLAPP MOTION WAS CORRECT

### A.

*Section 425.16 and the Applicable Standard of Review*

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

"The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity. Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. We have described this second step as a 'summary-judgment-like procedure.' [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the

10

plaintiff's claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed.'" (*Baral, supra*, 1 Cal.5th at pp. 384-385, fn. omitted.)

In *Baral, supra*, 1 Cal.5th at page 393, the California Supreme Court held the Legislature's choice of the term "motion to strike" reflected the understanding that "an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded." If the targeted claim amounts to a cause of action "in the sense that it is alleged to justify a remedy," it is subject to an anti-SLAPP motion. (*Id.* at p. 395.) "Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16. [Citations.] Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Id.* at p. 394.)

"We review an order granting or denying an anti-SLAPP motion under the de novo standard and, in so doing, conduct the same two-step process to determine whether as a matter of law the defendant met its burden of showing the challenged claim arose out of protected activity and, if so, whether the plaintiff met its burden of showing probability of success." (*Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 42 (*Newport Harbor*).)

B.

*The Trial Court Correctly Struck Allegations from the Complaint that Constituted Protected Activity Underlying the Elder Abuse Claim*

At the first step of resolving an anti-SLAPP motion, "the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." (*Baral, supra*, 1 Cal.5th at p. 396.) "A claim arises from protected activity within the meaning of section 425.16(b)(1) if the activity underlies or forms the basis for the claim. [Citations.] 'Critically, "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech."' [Citation.] 'In short, in ruling on an anti-SLAPP motion, courts

11

should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.'" (*Newport Harbor, supra*, 23 Cal.App.5th at p. 44.)

A defendant can meet his or her burden of making a threshold showing that a cause of action is one arising from protected activity by demonstrating the acts underlying the plaintiff's cause of action fall within one of the categories of section 425.16, subdivision (e). (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619.) Section 425.16, subdivision (e) provides in relevant part: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law."

Specific to this case, "[a]n unlawful detainer action . . . [is] protected activity within the meaning of section 425.16. [Citation.] 'A cause of action arising from such filing or service is a cause of action arising from protected activity.'" (*Newport Harbor, supra*, 23 Cal.App.5th at p. 45.)

In the anti-SLAPP motion, defendant cited the allegations in paragraphs 16, 17, and 18 of the complaint in support of his argument the complaint repeatedly cited the unlawful detainer actions defendant filed in an effort to evict the decedent "as being elements of the purported Elder Abuse." He also cited paragraph 31.D's references to defendant's unlawful detainer actions to show plaintiff's position regarding "how Defendant 'acted' in violation of the Elder Abuse statute."

A claim for the abuse of an elder can be based on financial abuse as alleged in this lawsuit. (Welf. & Inst. Code, § 15610.07, subd. (a)(3).) As relevant here, financial abuse of an elder occurs when a person "*retains* real or personal property of an elder . . . for a wrongful use or with intent to defraud, or both" (*id.*, § 15610.30,

12

subd. (a)(1), italics added) or by "undue influence, as defined in [Welfare and Institutions Code] Section 15610.70" (*id.*, § 15610.30, subd. (a)(3).)[4]

Plaintiff argues the trial court erred by striking the allegations regarding defendant's efforts to evict the decedent because "the elder financial abuse claim did not arise from those allegations of fact, but rather from [defendant]'s wrongful and continuous retaining of [the decedent]'s legal title to one-half of the property after she had turned 65." (Boldface and some capitalization omitted.)

But the complaint clearly alleges that one way in which defendant wrongfully retained the decedent's property within the meaning of section 15610.30 of the Welfare and Institutions Code was by attempting to evict her through the unlawful detainer process. The complaint's references to defendant's efforts to evict the decedent and other family members did not provide mere context and cannot be construed as merely incidental or collateral to the elder abuse claim. Their only relevance was to prove defendant's efforts to prevent the decedent from reestablishing her interest in the property. Plaintiff's elder abuse claim, therefore, was *based*, in part, on the allegations of defendant's serial, unsuccessful unlawful detainer actions, which plaintiff alleged caused the decedent great distress and even illness. Paragraph 31 of the complaint directly supports this conclusion as it states "Plaintiff is informed and believes, and thereon alleges, that Defendant GONZALEZ . . . acted as defined herein, in violation of the Elder Abuse Act towards Plaintiff, as follows: [¶] . . . [¶] D. Defendant Gonzalez attempted on

---

[4]  Subdivisions (b) and (c) of Welfare and Institutions Code section 15610.30 provide: "(b) A person or entity shall be deemed to have . . . retained property for a wrongful use if, among other things, the person or entity . . . retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult. [¶] (c) For purposes of this section, a person or entity . . . retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult."

13

several occasions to evict Decedent from her real property residence, causing Decedent great stress and illness."

The allegations underlying the elder abuse claim pertaining to defendant's unlawful detainer actions were based on protected activity. At the second step of resolving the anti-SLAPP motion, the burden shifted to plaintiff to demonstrate "that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral, supra*, 1 Cal.5th at p. 396.) A plaintiff cannot meet this burden by relying on its own pleading, even if verified, but must present admissible evidence. (*Newport Harbor, supra*, 23 Cal.App.5th at p. 49.) Plaintiff did not present *any* evidence to meet this burden. Therefore, the trial court properly struck the allegations of protected activity from the complaint.

### III.

### *The Trial Court Did Not Err by Refusing to Strike the Complaint in its Entirety*

Defendant argues the anti-SLAPP motion should have been granted in its entirety because (1) plaintiff failed to substantiate any part of the cause of action for financial elder abuse, and (2) the decedent did not own the property. Defendant's arguments are without merit.

As discussed *ante*, plaintiff did not produce evidence and thus did not carry his burden of proving a substantial probability of prevailing on the merits of his elder abuse claim to the extent it relies on the allegations of defendant's wrongful unlawful detainer actions. Consequently, the allegations of the unlawful detainer actions, as protected activity under section 425.16, were properly struck from the complaint.

Defendant argues that the trial court should have stricken the entire complaint because, after the allegations of protected activity were struck, there was nothing left in the complaint to support a claim for elder abuse. We disagree and conclude the elder abuse claim in the complaint is supported by allegations of unprotected activity.

14

The elements of a claim for financial abuse of an elder include that: (1) the defendant retained the plaintiff's property; (2) the plaintiff was 65 years or older at the time of the conduct; (3) the defendant retained the property for a wrongful use or with the intent to defraud or by undue influence; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the plaintiff's harm. (Welf. & Inst. Code, §§ 15610.07, 15610.27, 15610.30.)

In addition to containing allegations regarding defendant's unlawful detainer actions, the complaint alleges in paragraph 31.C that, after the decedent turned 65 years of age, defendant retained the property by repeatedly refusing the decedent's requests to restore her name on the title to the property to reflect her one-half interest in the property. The complaint also alleged defendant retained the property by insisting the decedent's payment of half the monthly mortgage to defendant constituted mere rent. And further still, the complaint alleged defendant retained the property by refusing to address the decedent's concerns after she learned defendant had unilaterally encumbered the property; instead, defendant dismissed her concerns, telling her, "It is none of your business." Defendant does not argue that the complaint fails to allege that defendant's retention of the property was for a wrongful use, with the intent to defraud, or by undue influence or that such conduct was a substantial factor in causing the decedent harm.

Because the complaint, sans the allegations regarding the unlawful detainer actions, alleges that defendant wrongfully retained the decedent's property within the meaning of section 15610.70 of the Welfare and Institutions Code, the complaint survives. (See *Baral, supra*, 1 Cal.5th at p. 396.) Any suggestion by defendant that the entire complaint must be stricken because plaintiff failed to show a probability of prevailing on the elder abuse claim based solely on *unprotected* activity is without merit and contrary to the procedures for resolving anti-SLAPP motions set forth in *Baral, supra*, 1 Cal.5th 376. Once we determine the conduct is unprotected, we do not even get to the second step.

We also reject defendant's argument the elder abuse claim is defeated because defendant currently holds title to the property and, as confirmed by prior rulings on demurrer, the statute of limitations has run on any action against him for quiet title. The complaint before us does not contain a claim for quiet title. It only contains a claim for elder abuse, the timeliness of which defendant does not question. That plaintiff is time-barred from pursuing a quiet title action is irrelevant to whether plaintiff may pursue remedies for having wrongfully retained title to the property through elder abuse.

## DISPOSITION

The order is affirmed. In the interests of justice, neither party shall recover costs on appeal.



FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MARKS, J.*

*Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.