Filed 8/22/23  Verceles v. Los Angeles Unified School Dist. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JUNNIE VERCELES,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>LOS ANGELES UNIFIED SCHOOL DISTRICT,<br><br>　　　Defendant and Appellant. | B318471<br><br>(Los Angeles County Super. Ct. No. 19STCV09932) |

APPEAL from an order of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge.  Affirmed.

Anthony J. Bejarano, Associate General Counsel, Los Angeles Unified School District; Hurrell Cantrall, Thomas C. Hurrell and Melinda Cantrall for Defendant and Appellant.

Wyatt Law and Andrew M. Wyatt for Plaintiff and Respondent.

————————————

In 2019 Junnie Verceles sued the Los Angeles Unified School District for discrimination and retaliation in violation of California's Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). After the trial court granted the District's special motion to strike the complaint, Verceles appealed. We reversed the trial court, finding Verceles's causes of action did not arise from protected activity within the meaning of Code of Civil Procedure section 425.16, subdivision (e).[1] (See *Verceles v. Los Angeles Unified School District* (2021) 63 Cal.App.5th 776 (*Verceles I*).) On remand Verceles filed a second amended complaint, which the District moved to strike pursuant to section 425.16. Relying on our analysis in *Verceles I,* the trial court denied the District's motion; and the District appealed. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Complaint, the First Motion To Strike and the First Appeal*

As set forth more fully in *Verceles I*, Verceles had been employed by the District as a teacher since 1998. In 2015, after a misconduct allegation was made against him, Verceles was removed from his teaching duties and reassigned to the local district office. He remained on paid suspension for three years while the Department investigated the misconduct charges. In March 2018 the District's Board of Education voted to terminate Verceles's employment. Verceles requested a review hearing before the Commission on Professional Competence (CPC) but

---

[1] Statutory references are to this code unless otherwise stated.

2

ultimately withdrew the request. A final dismissal notice was issued to Verceles on December 3, 2018

In 2019 Verceles initiated this lawsuit, alleging age discrimination, race and national origin discrimination and retaliation. The discrimination claims were based on a disparate impact theory: Verceles alleged his reassignment and suspension were the result of the Department's pattern and practice of discriminating against employees based on age, race and national origin. He also alleged the Department retaliated against him by terminating his employment after he had filed a discrimination complaint with the California Department of Fair Employment and Housing.

The District moved to strike the complaint, arguing it was based on acts in furtherance of its rights of petition and free speech within the meaning of section 425.16. The trial court agreed. On appeal we held the causes of action Verceles alleged in his complaint did not arise from the District's protected activity within the meaning of section 425.16, subdivision (e)(2), because Verceles's claims were based on "decisions to reassign him and terminate his employment rather than on any communications made during the investigation or the investigation as a whole." (*Verceles I, supra*, 63 Cal.App.5th at p. 786.) We also held the complaint was not based on protected activity within the meaning of subdivision (e)(4) because the District had "not identified any recognized constitutionally protected right of free expression that a school district has in its teacher assignment and hiring decisions." (*Id.* at pp. 789-790.) Nor had the District shown its actions were taken in furtherance of a constitutional right to petition. (*Id.* at pp. 790-792.)

2. *The Second Amended Complaint*

On remand the trial court granted the District's motion for judgment on the pleadings and gave leave to Verceles to amend his complaint. Verceles filed a first amended complaint and, on October 12, 2021, a second amended complaint. The second amended complaint contained largely the same factual allegations as the initial complaint, but instead of alleging discrimination based on disparate impact, it alleged age, race and national origin discrimination based on disparate treatment.[2] Specifically, Verceles alleged his suspension "adversely affected the terms and conditions of Plaintiff's employment on the basis that Plaintiff was over the age of 40" and "on the basis that Plaintiff was Filipino." Verceles also included a new allegation that the vice principal of his school "discriminated against Plaintiff by going out of her way to investigate and take disciplinary action against Plaintiff."

3. *The District's Special Motion To Strike the Second Amended Complaint*

On November 3, 2021 the District moved to strike the discrimination causes of action in the second amended complaint pursuant to section 425.16. The District argued the second amended complaint, unlike the original complaint, alleged the investigation itself was undertaken for a discriminatory purpose. Thus, according to the District, our reasoning in *Verceles I* was not controlling, and the District's investigation of misconduct allegations constituted protected activity within the meaning of section 425.16, subdivision (e)(2). The District also revived its

---

[2] The retaliation claim, which is not at issue on this appeal, remained substantially unchanged.

4

argument, rejected in *Verceles I*, that any act in preparation for or necessary to a potential CPC hearing constituted activity in furtherance of its right to petition and was therefore protected under section 425.16, subdivision (e)(4). To that end, the District submitted declarations from four attorneys and investigators explaining the considerations underlying its misconduct investigations and the requirements for teacher dismissals, including the statutory procedures for CPC hearings.

In his opposition Verceles did not dispute the second amended complaint alleged the investigation itself was discriminatory. However, he maintained the investigation did not constitute protected speech for purposes of section 425.16 without the allegation that specific oral or written statements caused him harm.

On December 7, 2021 the trial court denied the motion to strike, finding the allegations in the complaint did not arise from protected oral or written statements, but rather from the suspension and inadequate investigation. Relying on our analysis in *Verceles I*, the court also rejected the District's argument that any action related to a potential CPC hearing constituted protected petitioning activity.

The District filed a timely notice of appeal.

## DISCUSSION

1. *Governing Law and Standard of Review*

Section 425.16, commonly known as the anti-SLAPP statute, makes available a special motion to strike certain meritless claims early in the litigation: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a

public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); see *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619 ["[a] court may strike a cause of action only if the cause of action (1) arises from an act in furtherance of the right of petition or fee speech 'in connection with a public issue,' and (2) the plaintiff has not established 'a probability' of prevailing on the claims"].)

Pursuant to section 425.16, subdivision (e), an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

In ruling on a motion under section 425.16, the trial court engages in a now familiar two-step process. "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability

6

of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384; accord*, Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062-1063 (*Park*); accord, *Bonni, supra*, 11 Cal.5th at p. 1009.) Thus, "[t]he defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*); accord, *Bonni*, at p. 1012 ["'[A]ssertions that are "merely incidental" or "collateral" are not subject to section 425.16. [Citations.] Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute'"].) "'[T]he mere fact that an action [or claim] was filed after protected activity took place does not mean the action [or claim] arose from that activity for the purposes of the anti-SLAPP statute.'" (*Park*, at pp. 1062-1063; see *Rand Resources, LLC v. City of Carson, supra,* 6 Cal.5th at p. 621 ["a claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity, or when protected activity merely provides evidentiary support or context for the claim"].) "To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those

7

elements and consequently form the basis for liability.'" (*Wilson*, at p. 884; accord, *Bonni,* at p. 1009; *Park*, at p. 1063.)

We review de novo an order granting or denying a special motion to strike under section 425.16 (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1250; *Wilson*, *supra*, 7 Cal.5th at p. 884), considering the parties' pleadings and affidavits describing the facts on which liability or defenses are predicated. (§ 425.16, subd. (b)(2).)

> 2. *Verceles's Discrimination Claims Do Not Arise from the District's Protected Activity Pursuant to Section 425.16, Subdivision (e)(2)*

In *Verceles I* the District argued its reassignment and suspension of Verceles were protected activity because "inextricably tied" to the investigation of his conduct, which was an official proceeding within the meaning of section 425.16, subdivision (e)(2). (*Verceles I, supra,* 63 Cal.App.5th at p. 785.) As we recognized, "[I]n general, an investigation into a public employee's conduct is an official proceeding." (*Id.* at p. 787.) However, "the existence of an official proceeding does not necessarily transform any claim related to that proceeding into an action within the ambit of section 425.16, subdivision (e)(2). Such an interpretation ignores the plain language of the statute, which requires a claim be based on a written or oral statement made in connection with the proceeding." (*Id.* at p. 787.) We held the activity from which Verceles's claim arose—his reassignment and suspension—did not constitute protected activity: "In the absence of any oral or written statements from which Verceles's claims arise, the District's decision[ ] to place Verceles on leave . . . [is] not protected activity within the meaning of section 425.16, subdivision (e)(2), even if [that] decision[ ] [was] made in

8

conjunction with an official investigation. (See *Park, supra,* 2 Cal.5th at pp. 1069-1071; *Laker v. Board of Trustees of California State University* [(2019)] 32 Cal.App.5th [745], 773.)" (*Verceles I,* at p. 788.)

To the extent the claims in the second amended complaint similarly arise from Verceles's reassignment and suspension, there is nothing in the pleading, the intervening case law or the District's argument that necessitates our reconsideration or departure from our previous conclusion that those claims do not arise from protected activity.[3]

The District argues Verceles's discrimination claims now also arise from the investigation itself, not just his reassignment and suspension. That is correct. Verceles alleges the investigation into his conduct was initiated for a discriminatory purpose; therefore, the investigation itself is part of the wrongful conduct underlying Verceles's claims. However, Verceles does not rely on any specific oral or written statements in asserting these claims. Rather, they depend on the decision to undertake an

---

[3] Verceles suggests we decline to consider this appeal on the merits based on the law of the case doctrine. Because the second amended complaint rests on a different theory of liability than the original complaint and includes new allegations, the law of the case doctrine does not apply. (See *Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 41 [prior appellate decision regarding motion to strike complaint did not constitute law of the case in subsequent appeal regarding motion to strike amended complaint]; cf. *Dickenson v. Cosby* (2019) 37 Cal.App.5th 1138, 1154 [law of the case governed motion to strike amended complaint where claims were not "meaningfully different" from original complaint].)

investigation and potentially any decisions made regarding how to conduct the investigation.  Under these circumstances the claims are not based on protected activity within the meaning of section 425.16, subdivision (e)(2).

The District's conclusory assertion that the decision to investigate Verceles and the investigation as a whole are protected activity fails to recognize that this theory has been expressly rejected—not only by this court, but also by the Supreme Court.  In *Park, supra,* 2 Cal.5th 1057, the Supreme Court rejected the argument that "every aspect of [official] proceedings . . . is protected activity for anti-SLAPP purposes" and reiterated that "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of."  (*Id.* at pp. 1069, 1060; see also *Bonni, supra*, 11 Cal.5th at p. 1004 [holding that "statements made during and in connection with peer review proceedings . . . qualify as protected activity" but rejecting contention that "any claim arising from the peer review process necessarily targets protected speech or petitioning activity"]; *Wilson, supra*, 7 Cal.5th at p. 884.)  The *Park* Court further cautioned that the failure to distinguish between speech and conduct would interfere with "attempts to enforce the state's antidiscrimination public policy.  'Any employer that initiates an investigation of an employee, whether for lawful or unlawful motives, would be at liberty to claim that its conduct was protected and thereby shift the burden of proof to the employee who, without the benefit of discovery and with the threat of attorney fees looming, would be obligated to demonstrate the likelihood of prevailing on the merits.'"  (*Park,* at p. 1067.)

Our colleagues in the Sixth District came to the same conclusion in *Laker v. Board of Trustees of California State*

10

*University, supra*, 32 Cal.App.5th 745 (*Laker*).[4]  In that case the plaintiff alleged his employer had retaliated against him by making defamatory statements about him and by initiating three investigations into his conduct.  The court distinguished between the defamatory statements (specific identified statements made orally and in writing by particular individuals), which it found were protected by section 425.16, and the pursuit of the investigations, which it found were not protected.  The court emphasized that the plaintiff's allegations were based on the employer's "decision to pursue the investigations—rather than any particular statement made in the course of that investigation." (*Laker,* at p. 774.)  Accordingly, because the allegations were based on "the burden of three meritless investigations" rather than on "speech . . . by itself," the court held the claims did not arise from protected activity.  (*Id.* at p. 773.)

In support of its position the investigation itself is protected activity, the District primarily relies on *Jeffra v. California State Lottery* (2019) 39 Cal.App.5th 471.  We addressed this argument in *Verceles I*: "In *Jeffra* the plaintiff sued his public employer for retaliation after he had been investigated and placed on administrative leave. . . .  [T]he *Jeffra* plaintiff argued the investigation had been initiated for an improper purpose—retaliation for his whistleblower complaint.  Based on those allegations, our colleagues in Division Eight held the adverse employment action was the investigation itself, which was protected activity within the meaning of section 425.16,

---

[4]  Despite our citation to *Laker* in *Verceles I* for the same proposition discussed here, the District does not address it in its briefing.

subdivision (e)(2). (*Jeffra*, at pp. 482-483.) However, the court did not identify any written or oral statement made in connection with the official proceeding that formed the basis of plaintiff's claim. To the extent *Jeffra* intended to hold the investigation itself was protected activity, its analysis conflicts with that in *Park*; and we decline to follow it." (*Verceles I, supra,* 63 Cal.App.5th at pp. 787-788.) Curiously, the District does not address this last sentence. Nor has it given any reason our prior conclusion should not apply equally here.[5]

In sum, in the absence of any specified oral or written statements from which Verceles's claims arise, the District's decision to investigate him was not protected activity within the meaning of section 425.16, subdivision (e)(2). (See *Park, supra,* 2 Cal.5th at pp. 1069-1071; *Laker, supra,* 32 Cal.App.5th at p. 773.)

---

[5] In support of its argument the District also relies on Verceles's allegation that the "conduct and communication of Defendants, and each of them, substantially interfered with the employment of Plaintiff and created an intimidating, hostile and offensive environment." This allegation does not transform the complaint to one based on protected activity. Such a general allegation regarding unspecified communications does nothing more than reiterate that the alleged harm was caused by the conduct of the investigation as a whole. (See *Bonni, supra,* 11 Cal.5th at pp. 1023-1024 [defendant failed to establish protected status of "handful of miscellaneous retaliatory conduct not explicitly tied to any specific event or action"].)

3. *Verceles's Discrimination Claims Do Not Arise from the District's Protected Activity Pursuant to Section 425.16, Subdivision (e)(4)*

The District argues, as it did in *Verceles I*, that Verceles's claims are based on "conduct in furtherance of the exercise of the constitutional right of petition . . . in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) The District maintains that its participation and preparation for the CPC hearing, at which it must file a formal "accusation" requesting the dismissal of the employee and at which it bears the burden to show dismissal is warranted, constitute conduct in furtherance of its right to petition. The District further contends its investigation into Verceles's conduct was essential for it to discover the facts necessary to make its arguments at the potential CPC hearing and that Verceles's suspension pending the outcome of the investigation ensured he was not able to interfere with the investigation or intimidate witnesses. Accordingly, the District argues, those actions were in furtherance of its ability to petition on matters of public concern.

As we explained in *Verceles I*, Education Code section 44934, subdivision (b), provides the governing board of a school district may vote to dismiss an employee under certain circumstances, at which point the employee can demand a hearing before the CPC. If the employee does not demand a hearing within 30 days, the dismissal becomes final. Given that it is the teacher's choice whether to initiate a CPC hearing to challenge the board's decision and the process is created and governed by statute, rather than the result of a constitutional right, the District's preparation for, and participation in, the hearing simply does not constitute conduct in furtherance of the District's own right to petition.

13

This conclusion is supported by the Supreme Court's decision in *Bonni*. In that case, the Court explained that conduct in furtherance of the right of petition or free speech, for purposes of section 425.16, subdivision (e)(4), depended on whether the conduct "advances the [defendants'] '*ability* to speak [or petition] on matter of public concern.'" (*Bonni, supra*, 11 Cal.5th at p. 1022.) The plaintiff in *Bonni* was a physician who alleged his employers, two hospitals, had retaliated against him by suspending, and ultimately terminating, his staff privileges. The hospital defendants made arguments similar to those the District presents here—that "disciplining Bonni triggered a peer review hearing, an official proceeding during which the Hospitals' medical executive committee petitioned in support of its action." (*Id.* at p. 1022.) The Court declined to find any action that required the hospitals to convene a review hearing—an official proceeding within the meaning of section 425.16—necessarily affected the employers' constitutional rights. The Court stated that the suspensions' prompting of the hearing "does not mean the suspensions advanced the Hospitals' ability to speak or to petition on matters of public concern in any substantial way. . . . Section 425.16, subdivision (e)(4) does not extend protection to every bit of conduct factually related to actual speech or petitioning." (*Bonni*, at pp. 1022-1023.) The Court further noted that "[t]he Hospitals' briefing suggests that the primary impact a summary suspension has on peer review is that it triggers certain hearing rights for the *disciplined physician*, which the physician can choose to exercise or waive. But the Hospitals provide no explanation why conduct that empowered Bonni to exercise hearing rights furthered their own right to petition." (*Id.* at p. 1023, fn. 11.)

14

The same is true here.  The District has not established that its investigation, which ultimately allowed Verceles to exercise his statutory right to a hearing, implicated the District's constitutional petitioning rights.

## DISPOSITION

The order denying the District's special motion to strike is affirmed.  Verceles is to recover his costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.

15