Filed 3/10/26  Lahar v. Jaiswal CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DAVID A. LAHAR, | |
| Plaintiff and Respondent, | G064408 |
| v. | (Super. Ct. No. 30-2024-01378287) |
| SANJEEV JAISWAL et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeals from an order of the Superior Court of Orange County, Nathan R. Scott, Judge. Affirmed. Motion for sanctions denied.

Buchalter, Robert M. Dato; Frost Brown Todd and Holly Gilani for Defendants and Appellants Sanjeev Jaiswal and iFiber Optix, Inc.

Lewis Brisbois Bisgaard & Smith, Corinne C. Bertsche and David D. Samani for Defendants and Appellants Holly Gilani and Hess-Verdon & Associates, PLC.

Maralan Law and Sam Maralan for Plaintiff and Respondent.

Sanjeev Jaiswal and his company iFiber Optix, Inc. (collectively, Jaiswal) sued David Lahar and other parties for fraud and other causes of action (the underlying action). Jaiswal's claims were ultimately unsuccessful. After the trial court entered judgment in the underlying action, Lahar filed a malicious prosecution lawsuit against Jaiswal and his attorney, Holly Gilani and Hess-Verdon & Associates, PLC (collectively, Gilani). Pursuant to Code of Civil Procedure section 425.16, Jaiswal and Gilani then filed a special motion to strike the malicious prosecution complaint (the anti-SLAPP motions).[1] The court denied the anti-SLAPP motions. On appeal, Jaiswal and Gilani argue the court erred in denying the motions. We affirm. We also deny respondent Lahar's motion for sanctions.

FACTUAL AND PROCEDURAL BACKGROUND

I.

THE INITIAL COMPLAINT

On April 8, 2022, Jaiswal initiated the underlying action through his initial complaint. In his initial complaint, Jaiswal alleged the following facts: Nicholas Thomas Del Franco agreed to purchase iFiber from Jaiswal for $22.5 million. Del Franco introduced Jaiswal to Paul Garcia, whom Del Franco represented was a money manager of Montecristo Capital Management, Inc. Jaiswal and Del Franco agreed Montecristo would fund the purchase. Garcia told Jaiswal that Del Franco would have to pay Montecristo an "[i]nterest [r]eserve" payment of 10 percent of the purchase price, $2.25 million, before Montecristo could deploy the full purchase price of

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 413, fn. 2.) All further statutory references are to the Code of Civil Procedure unless otherwise specified.

$22.5 million. A month after the parties agreed to the purchase and funding, Del Franco introduced Jaiswal to Lahar. Lahar agreed he would manage iFiber once Del Franco closed the transaction.

To effectuate the purchase of iFiber, Del Franco and Jaiswal entered into a letter of intent. Lahar did not sign the letter of intent. Shortly after entering into the letter of intent, Jaiswal loaned Del Franco $1.425 million, half of the 10 percent interest reserve, and later, another $1.365 million. Jaiswal also paid Del Franco's girlfriend $350,000 to "facilitate the closing" of the purchase. After Jaiswal sent the funds, he and Del Franco signed an asset purchase agreement. Lahar was not a party to the asset purchase agreement. Because Montecristo never funded the purchase and Del Franco never returned the money Jaiswal had loaned Del Franco, Jaiswal filed his initial complaint.

The initial complaint alleged 14 causes of action: (1) "Money Had and Received"; (2) "Fraud–Intentional Misrepresentation"; (3) "Fraud–Concealment"; (4) "False Promise"; (5) "Fraud and Deceit and Conspiracy"; (6) "Fraud–Violation of Securities Exchange Act [of 1934 (15 U.S.C. § 78j) and] Rule 10[b-5 (17 C.F.R. § 240.10b-5)]"; (7) "Breach of Contract"; (8) "Promissory Estoppel"; (9) "Conversion"; (10) "Unjust Enrichment and for an Accounting"; (11) "Imposition of Constructive Trust/Equitable Lien"; (12) "Imposition of Resulting Trust"; (13) "Declaratory Relief"; and (14) Business and Professions Code section 17200. (Some capitalization omitted.) Jaiswal named Lahar as a defendant in all but the seventh cause of action.

Lahar filed a demurrer to the initial complaint. In August 2022, the trial court sustained Lahar's demurrer to the entire complaint with leave to amend.

## II.

### THE FIRST AMENDED COMPLAINT

Jaiswal filed the first amended complaint in September 2022. Among other new facts, the first amended complaint added new parties and new allegations. The first amended complaint included 20 causes of action. The following causes of action were against Lahar: (1)–(2) "Breach of Contract"; (5) "Money Had and Received"; (6) "Fraud–Intentional Misrepresentation"; (7) "Fraud–Concealment"; (8) "False Promise"; (9) "Fraud Inducement of Contract"; (10) "Fraud and Deceit and Conspiracy"; (11) "Intentional Fraudulent Conveyance"; (12) "Conspiracy to Commit Fraudulent Conveyance"; (13)"Conversion"; (14) "Fraud–Violation of Securities Exchange Act [of 1934 (15 U.S.C. § 78j) and] Rule 10[b-5 (17 C.F.R. § 240.10b-5)]"; (15) "Promissory Estoppel"; (16) "Unjust Enrichment and for an Accounting"; (17) "Imposition of Constructive Trust/Equitable Lien"; (18) "Imposition of Resulting Trust"; (19) "Declaratory Relief"; and (20) Business and Professions Code section 17200 et seq. (Some capitalization omitted.)

Relevant to this appeal, Jaiswal alleged in the first amended complaint he, Del Franco, and Lahar verbally agreed Del Franco and Lahar would purchase 49 percent of iFiber. Jaiswal further alleged Lahar was a party to a "share purchase agreement" which indicated Del Franco and Lahar agreed to jointly purchase 49 percent of iFiber. Jaiswal, however, did not enclose a new share purchase agreement to his first amended complaint, but rather enclosed the same asset purchase agreement where only Del Franco signed. Jaiswal explained Lahar was not named in any of the documents because the funding of the purchase would be mostly based on Del Franco's credit history.

4

Lahar filed a demurrer to the first amended complaint, which the trial court heard and sustained in April 2023, and on May 1, 2023, Lahar served Jaiswal with notice of ruling on the demurrer and motion to strike, including the court's minute order. Relevant to this appeal, the court struck the breach of contract causes of action without leave to amend and sustained Lahar's demurrer to the fraud causes of action without leave to amend.[2] The court determined the sham pleading doctrine barred the breach of contract cause of action because the allegations in the initial complaint were "flatly contradictory" to those in the first amended complaint. Specifically, Jaiswal's allegation Lahar breached an oral agreement to purchase part of iFiber was "contradictory" to the allegation in the initial complaint that Del Franco agreed to purchase iFiber from Jaiswal and signed the asset purchase agreement to that effect. Although the court maintained Jaiswal could file a motion for leave to amend the first amended complaint in order to avoid falling afoul of the sham pleading doctrine, Jaiswal never did.

### III.

### SETTLEMENT AND FINAL JUDGMENT

Jaiswal reached settlements in the underlying action with Garcia and Del Franco in March and April 2023, respectively. According to Jaiswal, Del Franco paid $300,000 to have Lahar dismissed from the complaint as part of that settlement. Lahar was not a party to the settlement. During the settlement negotiations, Jaiswal had reached out to Lahar via telephone.

---

[2] The trial court struck some causes of action without leave to amend, sustained the demurrer to other causes of action without leave to amend, and sustained the demurrer to the rest of the causes of action with leave to amend. Because Lahar's malicious prosecution claim focuses solely on breach of contract and fraud, we limit our recitation of the facts to those causes.

Lahar did not answer the phone and instead texted Jaiswal, "Why are you trying to reach me?" Jaiswal texted back, "May[be] you can put some sense [into Del Franco], [¶] [Garcia] got his part done, may[be] a conversation will help you understand the situation." Lahar responded that he "[was] not involved" in the underlying case and "dragging [him] into this was built on lies and misrepresentations." Lahar indicated he did not want to talk to anyone about the case.

Based on the settlement and the desire to stop increasing litigation costs and fees, Jaiswal decided to discontinue all litigation in the underlying case and against Lahar. As a result, Jaiswal filed a request to dismiss all his claims against Lahar on May 22, 2023. Shortly thereafter, in June 2023, Lahar filed an ex parte motion for dismissal. The trial court granted Lahar's motion. It maintained Jaiswal lost the right to amend the first amended complaint or voluntarily dismiss it 10 days after May 1, 2023, when Lahar gave Jaiswal notice of the court's April 27, 2023 minute order granting Lahar's motion to strike and sustaining his demurrer. Thus, the court vacated Jaiswal's May 22, 2023 request for dismissal and entered a judgment of dismissal in Lahar's favor.

IV.

LAHAR FILES MALICIOUS PROSECUTION COMPLAINT

Lahar filed a complaint for malicious prosecution against Jaiswal and Gilani in February 2024. Lahar limited his complaint to the causes of action for fraud and breach of contract. Lahar alleged Gilani and Jaiswal lacked probable cause to bring these causes of action because they knew there were no facts to support the initial complaint and the first amended complaint. Lahar argued the facts in the initial complaint changed entirely in the first amended complaint. Lahar further alleged "[n]o reasonable attorney

6

would have filed or pursued" the claims because "no evidence existed to support" them.

About a month after Lahar filed his malicious prosecution complaint, Jaiswal and Gilani filed anti-SLAPP motions. Jaiswal and Gilani argued Lahar did not receive a favorable termination on the merits in Jaiswal's underlying action because the dismissal was based on a settlement. They further argued they had probable cause to bring Jaiswal's claims because they had a basis to believe the changed allegations from the initial complaint to the first amended complaint. Finally, they argued Lahar could not make a prima facie showing of malice because they did not initiate or litigate the underlying action due to any ill will or personal animus. Rather, they operated as reasonable, zealous advocates, based on the evidence provided by Jaiswal and the information obtained through discovery.

The trial court denied the anti-SLAPP motions. The court determined Lahar had obtained a favorable termination on the fraud and breach of contract causes of action in the underlying action. Specifically, in the underlying action, the court found the breach of contract cause of action was a sham pleading and found the fraud causes of action "failed to state causes of action." Moreover, "nothing show[ed] Jaiswal settled the subject claims against Lahar." The court also found Lahar showed Jaiswal and Gilani maintained the breach of contract cause of action without probable cause because "[n]o reasonable attorney" would find the cause of action was "legally tenable." Additionally, the court noted Lahar was not a party to the asset purchase agreement, and nothing showed the asset purchase agreement did not supersede all prior agreements. The court concluded Lahar made a prima facie case showing Jaiswal and Gilani initiated or maintained at least the breach of contract cause of action with malice. With respect to the

7

malice element, the court determined the breach of contract cause of action lacked merit, and Jaiswal's attempt to explain the inconsistencies between the initial complaint and the first amended complaint was "objectively untenable." The court also noted "an improper purpose can include "'"'forcing a settlement which has no relation to the merits of the claim.'"'"'" It found Jaiswal's communications with Lahar suggested Jaiswal pursued Lahar to force Del Franco into settling.

DISCUSSION

I.

ANTI-SLAPP LEGAL FRAMEWORK AND STANDARD OF REVIEW

The anti-SLAPP statute aims to shield defendants from "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) To curb such abuses of the civil justice system, "the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.) "The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) The statute must "be construed broadly." (§ 425.16, subd. (a).)

Courts evaluate anti-SLAPP motions through a two-step process. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.) First, "the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant

8

has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061, quoting § 425.16, subd. (b)(1); see § 425.16, subd. (e) [defining protected activity].) Second, if the defendant satisfies the first step, the plaintiff must show "there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The plaintiff must establish the claim has "at least 'minimal merit.'" (*Park*, *supra*, 2 Cal.5th at p. 1061.)

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park v. Board of Trustees of California State University*, *supra*, 2 Cal.5th at p. 1067.) "'"Thus, we apply our independent judgment, both to the issue of whether the cause of action arises from a protected activity and whether the plaintiff has shown a probability of prevailing on the claim."'" (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671.)

II.

STEP ONE: PROTECTED ACTIVITY

A claim is only subject to an anti-SLAPP motion if it "aris[es] from" protected activity. (§ 425.16, subd. (b)(1).) Section 425.16, subdivision (e)(1)–(2), defines protected activity to include any statement made in a judicial proceeding or in connection with an issue under consideration by a judicial body. "We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.'" (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 491.) The parties agree Lahar's malicious prosecution complaint arises from protected activity, therefore we turn to the second prong of the anti-SLAPP analysis.

9

III.

STEP TWO: PROBABILITY OF PREVAILING ON THE MERITS

*A. Lahar Carried His Burden of Showing a Probability of Prevailing on the Merits of the Malicious Prosecution Cause of Action*

As discussed *ante*, once Jaiswal and Gilani met their burden of demonstrating Lahar's malicious prosecution cause of action arose from protected activity, the burden shifted to Lahar to demonstrate the malicious prosecution cause of action was "legally sufficient and factually substantiated." (*Baral v. Schnitt, supra*, 1 Cal.5th at p. 396.) A plaintiff cannot meet this burden by relying on its own pleading but must present admissible evidence. (*Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 49.) As discussed in more detail below, we find Lahar carried his burden.

1. Elements of a Malicious Prosecution Claim

A successful malicious prosecution claim has three elements: It "was (1) initiated or maintained by, or at the direction of, the defendants, and pursued to a legal termination in favor of the malicious prosecution plaintiff; (2) initiated or maintained without probable cause; and (3) initiated or maintained with malice." (*Roche v. Hyde* (2020) 51 Cal.App.5th 757, 787.)

a. Favorable Termination of the Prior, Underlying Proceeding

The favorable termination element has been interpreted as requiring a resolution, either express or implied, on the substantive merits of the claim, as opposed to procedural or technical resolutions. The "termination must *reflect* on the merits of the underlying action." (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750.) "It is apparent 'favorable' termination does not occur merely because a party complained against has prevailed in an underlying action. While the fact he has prevailed is an ingredient of a

10

favorable termination, such termination must further reflect on his innocence of the alleged wrongful conduct. If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution." (Id. at p. 751.) "The key is whether the termination reflects on the underlying defendant's innocence." (*Eells v. Rosenblum* (1995) 36 Cal.App.4th 1848, 1855.) "The test is whether or not the termination tends to indicate the innocence of the defendant or simply involves technical, procedural or other reasons that are not inconsistent with the defendant's guilt." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 881.) "Examples of technical or procedural reasons for terminating an action include abandonment of 'the proceeding because of the defects in the complaint, or doubts as to the jurisdiction of the offense, with the intention of bringing a new proceeding in proper form or before a proper court.'" (*Eells, supra,* 36 Cal.App.4th at p. 1855.) In "'determin[ing] "whether there was a favorable termination," we "look at the judgment as a whole in the prior action."'" (*Maleti v. Wickers* (2022) 82 Cal.App.5th 181, 211.)

Here, the trial court in the underlying action sustained Lahar's demurrer to the fraud causes of action because they failed to state a cause of action. The court struck the breach of contract cause of action without leave to amend because it was barred by the sham pleading doctrine. The court determined both the fraud and breach of contract causes of action were based on an oral agreement that was "'not plausible'" based on Jaiswal's pleadings. These circumstances "reflect[ ] the opinion of the court or the prosecuting party that the action would not succeed." (*Sierra Club Foundation v. Graham*

11

(1999) 72 Cal.App.4th 1135, 1149,) and therefore constituted a favorable determination as to Lahar.[3]

As they did in the trial court, Gilani and Jaiswal contend Jaiswal dismissed his underlying action against Lahar because Jaiswal reached a settlement with Del Franco and Garcia in March 2023. Gilani and Jaiswal admit Lahar was neither a party nor a signatory to the settlement. The court initially confirmed Jaiswal's dismissal as to Lahar, but later vacated the judgment because Jaiswal had lost the right to voluntarily dismiss his complaint against Lahar 10 days after he was served with the court's minute order. The court then entered a judgment in Lahars' favor pursuant to section 581, subdivision (f) and California Rules of Court, rule 3.1320(h) with prejudice. These facts show Jaiswal neither did nor could have voluntarily dismissed his first amended complaint as part of his settlement with Del Franco and Garcia.

Jaiswal and Gilani also attempt to argue the trial court misapplied the sham pleading doctrine as to the underlying action. Jaiswal, however, failed to appeal from that June 1, 2023 minute order, and we cannot consider his challenge to the finding now. "'If a judgment or order is appealable, an aggrieved party *must* file a *timely* appeal or forever *lose* the opportunity to obtain appellate review.'" (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46.) Consequently,

---

[3] Despite his opportunity to file a notice for leave to amend without falling afoul of the sham pleading doctrine, Jaiswal failed to cure the defect and file a second amended complaint. Typically, the failure to amend a complaint constitutes an admission the plaintiffs have stated the case as strongly as they could have, and no additional facts could be alleged to cure the defect. (*Le Mere v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 237, 244.)

"'[a] party who fails to take a timely appeal from a decision or order from which an appeal might previously have been taken cannot obtain review of it on appeal from a subsequent judgment or order.'" (*Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 509.) The June 1, 2023 minute order granting Lahar's ex parte application was final and appealable. (See *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 554.) By failing to timely appeal that order, Jaiswal has forfeited his right to challenge it and cannot obtain review thereof in this appeal arising from Lahar's malicious prosecution case.

b. Probable Cause

"'Probable cause is a low threshold designed to protect a litigant's right to assert arguable legal claims even if the claims are extremely unlikely to succeed. "[T]he standard of probable cause to bring a civil suit [is] equivalent to that for determining the frivolousness of an appeal [citation], i.e., probable cause exists if 'any reasonable attorney would have thought the claim tenable.' [Citation.] This rather lenient standard for bringing a civil action reflects 'the important public policy of avoiding the chilling of novel or debatable legal claims.' [Citation.] Attorneys and litigants . . . "have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . ."'" [Citations.] Only those actions that "'any reasonable attorney would agree [are] totally and completely without merit'" may form the basis for a malicious prosecution suit."'" (*Mendoza v. Wichmann* (2011) 194 Cal.App.4th 1430, 1449, quoting *Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1047–1048.)

An attorney has probable cause to pursue an action if the attorney has "'evidence sufficient to uphold a favorable judgment or information affording an inference that such evidence can be obtained for

13

trial.'" (*Arcaro v. Silva & Silva Enterprises Corp.* (1999) 77 Cal.App.4th 152, 157.) An inference is not reasonable if it is based on suspicion, imagination, speculation, surmise, conjecture, or guesswork. (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1113.) "A claim of malicious prosecution may be based on a single *ground* for liability alleged in the complaint that lacks probable cause." (*Kreeger v. Wanland* (2006) 141 Cal.App.4th 826, 834, citing *Crowley v. Katleman* (1994) 8 Cal.4th 666, 679.)

Here, Lahar was neither a party to the agreement nor to the letter of intent when Gilani filed the initial complaint and the first amended complaint. Jaiswal's own pleadings and his declaration to the initial complaint failed to allege he entered into an oral agreement with Lahar. Based on those known facts, no reasonable attorney would have thought Jaiswal's breach of contract action against Lahar was legally tenable. (*Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 568.) Jaiswal's later declaration, where he tries to explain the inconsistencies, fails to explain why the alleged oral agreement overrode the asset purchase agreement, which explicitly states: "complete, final and exclusive agreement among [Jaiswal and Del Franco] with respect to the purchase." Based on these facts, Gilani did not have probable cause to pursue the breach of contract cause of action because they did not have "'evidence sufficient to uphold a favorable judgment or information affording an inference that such evidence can be obtained for trial.'" (*Arcaro v. Silva & Silva Enterprises Corp., supra,* 77 Cal.App.4th at p. 157.)

c. Malice

"The 'malice' element . . . relates to the *subjective* intent or purpose with which the defendant acted in initiating the prior action.

14

[Citation.] The motive of the defendant must have been something other than that of . . . the satisfaction in a civil action of some personal or financial purpose. [Citation.] The plaintiff must plead and prove actual ill will *or* some *improper* ulterior motive." (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 494.) Improper purposes can be established in cases in which, for instance: (1) the person bringing the suit does not believe the claim may be held valid; (2) the proceeding is initiated primarily because of hostility or ill will; (3) the proceeding is initiated solely for the purpose of depriving the opponent of a beneficial use of property; or (4) the proceeding is initiated for the purpose of forcing a settlement bearing no relation to the merits of the claim. (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1407.) If the prior action was not objectively tenable, the extent of a defendant's attorney's investigation and research may be relevant to the further question of whether the attorney acted with malice. (*Ibid.*) "Since parties rarely admit an improper motive, malice is usually proven by circumstantial evidence and inferences drawn from the evidence." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218.)

As noted above, the facts in Jaiswal's initial complaint and the first amended complaint were inconsistent. Jaiswal attempted to explain the inconsistencies by stating he had discovered new information, i.e. the supposed oral agreement between himself and Lahar. However, the oral agreement allegedly occurred before Jaiswal filed his initial complaint. Jaiswal would therefore have known of the agreement before he filed his initial complaint. Jaiswal also alleged he entered into the letter of intent and the asset purchase agreement after he discovered he was being defrauded and wanted the writings as evidence. The writings, however, occurred before Jaiswal ever transferred the funds to Del Franco. The record also shows

Jaiswal brought the breach of contract cause of action against Lahar because he wanted to pressure Del Franco into settling. During the underlying action, Jaiswal asked Lahar to "put some sense" into Del Franco and stated: "[Garcia] got his part done, may[be] a conversation will help [Lahar] understand the situation." These facts taken together support a prima facie showing Jaiswal initiated and maintained the breach of contract cause of action with malice. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 296 ["malice can also be inferred from the evidence that defendants lacked probable cause to initiate and maintain the underlying action"].)

With respect to Gilani, they were Jaiswal's attorneys from the time he filed his initial complaint. The terms of the asset purchase agreement and conflicting information in Jaiswal's declarations suggest Gilani knew the breach of contract claim against Lahar lacked merit. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 881 [evidence "the defendant attorney did not subjectively believe that the action was tenable would clearly be relevant to the question of malice"].) Moreover, although Gilani tried to obtain discovery to show Lahar's involvement, they failed to show any examination as to how the asset purchase agreement impacted the alleged oral agreement. This was probative evidence which supports an inference of malice. (See *id.* at p. 883 [where underlying action was not legally tenable, "extent of a defendant attorney's investigation and research may be relevant to the further question of whether or not the attorney acted with malice"].) Based on the record before us, the evidence is sufficient to demonstrate the minimal merit necessary to defeat Gilani's and Jaiswal's anti-SLAPP motion on the issue of malice.

## LAHAR'S MOTION FOR SANCTIONS

Lahar moved for sanctions on appeal, contending the appeal was completely meritless, frivolous, and taken for the sole purpose of delay. An appellate court may impose monetary sanctions in such instances. (§ 907; Cal. Rules of Court, rule 8.276 (a)(1).) In evaluating whether an appeal is frivolous, we use a subjective and objective standard. (*Malek Media Group, LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, 834 (*Malek Media Group*).) "'The subjective standard looks to the motives of the appealing party and his or her attorney, while the objective standard looks at the merits of the appeal from a reasonable person's perspective.'" (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 192.) A frivolousness finding may be based on either standard, but the two tests are commonly used together "with one sometimes providing evidence relevant to the other." (*Malek Media Group, supra,* 58 Cal.App.5th at p. 834.)

In considering whether an appeal is objectively frivolous, the question is not whether counsel had an honest belief they had grounds for appeal, but rather whether any reasonable person would agree the appeal is completely devoid of merit. (*Malek Media Group,* supra, 58 Cal.App.5th at p. 834.) If legal authority addressing the precise issue raised on appeal exists or if appellant's arguments rely on "negligible legal foundation," an appeal may be objectively frivolous. (*Id.* at pp. 834–835.) "An appeal is totally devoid of merit where there are 'no unique issues, no facts that are not amenable to easy analysis in terms of existing law, and no reasoned argument by [appellant] for an extension of existing law.'" (*Id.* at p. 835.)

The imposition of sanctions is appropriate "'to compensate for a party's egregious behavior, and to deter abuse of the court system and the

17

appellate process.'" (*Malek Media Group*, *supra*, 58 Cal.App.5th at p. 834.) But they should not be used merely because an appeal is meritless. (*Ibid.*) Indeed, the indiscriminate application of sanctions pursuant to section 907 "'could deter attorneys from vigorously representing their clients, and deter parties from pursuing legitimate appeals.'" (*Ibid.*)

Based on the record before us, we cannot conclude Gilani and Jaiswal appealed for the sole purpose of delay or that the appeal was completely meritless. Lahar contends Jaiswal and Gilani misrepresented the record and obscured facts. Lahar's argument focuses on Jaiswal and Gilani's discussion regarding the dismissal of the first amended complaint. We agree Jaiswal and Gilani incorrectly argue the settlement was the reason Jaiswal dismissed Lahar from the lawsuit. We also recognize Gilani and Jaiswal failed to reference the trial court vacated the May 1, 2023 judgment. Accordingly, we caution appellate counsel not to overstate or misrepresent the record under the cloak of effective advocacy because it, at the very least, violates court rules. (See Cal. Rules of Court, rule 8.204(a)(1)(C).)

We, however, cannot say Gilani and Jaiswal's conduct was egregious because one of the main issues on appeal was a disagreement on whether the judgment was a favorable termination on the merits. Additionally, had Jaiswal and Gilani "elected not to appeal, they would have done so at the risk of waiving whatever appellate rights they might have had." (*Young v. Hartford* (2024) 106 Cal.App.5th 730, 741.) Thus, mindful that sanctions should be "'used most sparingly to deter only the most egregious conduct' [citation], and that [the fact] an appeal lacks merit does not, alone, establish it is frivolous" (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 518), we deny Lahar's motion for sanctions.

## DISPOSITION

The order is affirmed. Lahar is to recover costs on appeal.


MOTOIKE, ACTING P. J.

WE CONCUR:


MOORE, J.


DELANEY, J.